TRUSTEES OF SABINE AREA CARPENTERS' HEALTH & WELFARE FUND, Trustees of Sabine Area Carpenters' Pension Trust Fund, and Trustees of Sabine Area Carpenters' Apprenticeship and Training Trust Fund, Plaintiffs-Appellants,

v.

DON LIGHTFOOT HOME BUILDER, INC., Defendant-Appellee.

No. 82–2344
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

May 12, 1983.

Provost, Umphrey, Doyle & McPherson, Robert E. Barron, John B. Stevens, Port Arthur, Tex., for plaintiffs-appellants.

Mehaffy, Weber, Keith & Gonsoulin, Dewey J. Gonsoulin, John Durkay, Beaumont, Tex., for defendant-appellee.

Before ALVIN B. RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Summary judgment is forbidden when there are genuine disputes concerning material facts. When, however, all of the facts are uncontroverted, and the issue is only the legal conclusion to be drawn from them, summary judgment fulfills its role: to provide quick legal decision without the delay and expense of trial.

The trustees of three carpenters' union funds who sought to compel employer contributions to the funds from a home building company assert that the trial court overlooked controverting evidence in the record and denied them procedural due process when it granted the company's orally renewed motion for summary judgment on the day scheduled for trial. Concluding that there were no outstanding issues of material fact, that the trustees were afforded procedural due process, and that they waived the right to appeal noncompliance with Fed.R.Civ.P. 56 by failing to make timely objection, we affirm the judgment of the district court.

As part of a labor agreement with the District Council of Sabine Area and Vicinity of the United Brotherhood of Carpenters and Joiners of America (the Union), Don Lightfoot Home Builder, Inc. (Home Builder) agreed to pay contributions to the Sabine Area Carpenters' Pension Trust Fund, Health and Welfare Fund, and Apprenticeship and Training Trust Fund (which, jointly, we refer to as the Funds) for hours worked by Home Builder carpenter-employees within the territorial jurisdiction of the Union. The trustees of the Funds sued Home Builder in 1981 to recover $100,587, representing contributions allegedly due for work performed by 19 carpenters between 1978 and 1981, and penalties and attorneys' fees for late payment.

Nine months after the trustees filed suit, on March 29, 1982, Home Builder moved for summary judgment. Home Builder took the position that the carpenters for whom the trustees sought contributions were independent contractors, not Home Builder employees, and that Home Builder, therefore, owed no contributions for them. The trustees had taken depositions of Home Builder's president, Don Lightfoot; a Home Builder superintendent, Ray Williams; and three carpenters who worked for Home Builder, Vernon LeBlanc, Ray Ingram, and Bill Bryant. Home Builder's summary judgment motion referred to testimony from these depositions. The trustees responded to the motion on May 13, but offered no additional evidentiary material. After considering the written submissions of both parties, the district court denied summary judgment on May 26 and set a trial date of July 6. On the day scheduled for trial, Home Builder orally renewed its motion for summary judgment, urging again that the carpenters were independent contractors, and offering an affidavit executed by Don Lightfoot. The district court agreed to hear immediate oral argument on the motion. The trustees did not object to this procedure. They did not seek postponement of the hearing, nor did they ask leave to file controverting evidentiary material later. They elected to argue the merits of the motion. At the conclusion of the hearing, the court granted Home Builder's motion and entered summary judgment that same day. Ten days later, the trustees filed a motion for rehearing of Home Builder's summary judgment motion and submitted two controverting affidavits. The district court declined to reconsider its judgment, and the trustees appealed.

They argue that the district court erred in granting summary judgment because the deposition evidence in the record showing an unresolved issue of material fact, viz., whether the carpenters for whom the trustees sought contributions were independent contractors or employees. They point to several allegations in the record that would support a finding of an employer-employee relationship. In particular, they assert that the carpenters worked exclusively for Home Builder pursuant to form agreements, of no specific duration, that were prepared by Home Builder; Home Builder fixed the price of the work the carpenters performed, giving the carpenters themselves no opportunity to negotiate price; and they looked

to Home Builder for payment, rather than to the eventual owners of the homes on which the work was performed. They further alleged that Home Builder employed at least one carpenter, Bill Bryant, on an hourly basis and reported his wages on a W–2 form. Home Builder also paid workmen's compensation insurance for some carpenters. The carpenters' work was directed and controlled by two Home Builder supervisors. Home Builder furnished the construction materials. The carpenters themselves had no employees. They did no independent advertising.

Alternatively, the trustees urge that summary judgment was improperly granted because the procedural requisites of Fed.R. Civ.P. 56(c) were not met, and they were thereby denied procedural due process. Rule 56(c) provides that a motion for summary judgment "shall be served at least 10 days before the time fixed for hearing. The adverse party prior to the day of hearing may serve opposing affidavits." The trustees contend that, by hearing immediate argument on Home Builder's renewed motion for summary judgment and ruling on the motion that same day, the trial court deprived them of adequate notice and an opportunity to prepare a proper response and controverting affidavits. We consider each of the trustees' arguments in turn.

I.

The trustees concede that whether or not Home Builder's carpenters were employees is dispositive of this case.[1] Because we agree with the district court that there was no genuine dispute concerning the facts on which the carpenters' status as independent businessmen would be adjudicated, we conclude that summary judgment was not precluded.

Whether the carpenters were "independent contractors" or "employees" for whom fund contributions were due turns on the degree of their economic dependence on Home Builder.[2] Five standards are applied to gauge the extent of workers' dependence: (1) the control exerted by the alleged employer over the workers; (2) the workers' opportunity for profit or loss; (3) the workers' investment in the enterprise; (4) the permanence of the relation between the alleged employer and the workers; and (5) the skill required for the performance of the work.[3] These tests are only aids, however, for determining the workers' status; the ultimate question is whether they reveal that the workers "[are] economically dependent for [their] livelihood on the business to which [they] render[] service."[4]

On the record in this case, by each of these five tests, the carpenters were autonomous businessmen, and collectively the tests here provide an accurate appraisal of

---

**1.** The pretrial order noted that Home Builder's obligations with respect to its subcontractors under its agreement with the Union, while not raised in the trustees' complaint, was then a contested issue. The trustees do not now assert, though, that Home Builder owes any contributions to the Funds if the carpenters were subcontractors rather than employees. Only the current version of the agreement between Home Builder and the Union, effective from July 1981 to June 1984, speaks to Home Builder's obligations with respect to its subcontractors. The present agreement provides: "[I]t shall be mandatory upon [Home Builder] and every sub-contractor under [it] to pay ... fringe benefits ... for any work covered by this Agreement...." This clause did not appear in those versions of the Agreement that were effective before July 1981.

**2.** See Bartels v. Birmingham, 332 U.S. 126, 130, 67 S.Ct. 1547, 1549–50, 91 L.Ed. 1947, 1953

(1947) (social security taxes paid for employees under Social Security Act); Rutherford Food Corp. v. McComb, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947) (employment records and overtime payments to employees under Fair Labor Standards Act); United States v. Silk, 331 U.S. 704, 714–19, 67 S.Ct. 1463, 1468–71, 91 L.Ed. 1757, 1768–71 (1947) (social security taxes paid for employees under Social Security Act); Usery v. Pilgrim Equipment Co., 527 F.2d 1308, 1311 (5th Cir.), cert. denied, 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976) (regulation of employees' wages and hours under Fair Labor Standards Act).

**3.** Usery, 527 F.2d at 1311.

**4.** Hickey v. Arkla Industries, Inc., 688 F.2d 1009, 1012 (5th Cir.1983). See also Weisel v. Singapore Joint Venture, Inc., 602 F.2d 1185, 1189 (5th Cir.1979); Usery, 527 F.2d at 1311.

Home Builder's relationship with its carpenters. The evidence showed that, when Home Builder began constructing homes in 1973, it hired carpenters as employees. In 1974, Home Builder changed its method of business. All carpentry work thereafter was subcontracted pursuant to standing written agreements, executed the first time Home Builder did business with its subcontractors, to govern all subsequent jobs. The form agreements stipulated that the carpenters were to have full control over their work:

> It is mutually agreed and understood by and between the parties hereto that [Home Builder] shall have no right of direction or control over the performance of this contract by CONTRACTOR save and except as to the results to be accomplished, and that CONTRACTOR enters into this contract with the definite and affirmative understanding and agreement that he is entering into same as an INDEPENDENT CONTRACTOR, controlling all his movements and operations and those of his employees, if any, and reserving unto the said CONTRACTOR all right to so control same, and [Home Builder] hereby surrenders all rights or claim of right to control CONTRACTOR or CONTRACTOR's employees in the performance of this Contract.

Home Builder's relationship with its carpenters, in fact, conformed to these agreements. In their depositions and affidavits, the carpenters referred to themselves as "subcontractors" or "self-employed businessmen." They were hired on a "piecemeal" basis, *i.e.*, to do the framing, roofing, or finishing on a particular home. They performed the work for a set price per linear or square foot. Home Builder supplied the building materials, but the carpenters supplied their own tools, trucks, and equipment. Two Home Builder superintendents checked on the construction periodically to be sure that the work was done correctly and to report to a Home Builder bookkeeper that the carpenters could be paid, but the superintendents did not supervise construction. The carpenters decided their own work schedules, techniques, and procedures. They placed their own orders with Home Builder for building materials. They were free to subcontract or to hire their own employees.

Home Builder paid only occasional, mostly unskilled, laborers on an hourly basis.[5] One Home Builder superintendent, Ray Williams, was paid on an hourly basis for minor carpentry repairs to homes that had already been completed. This work consumed only a couple of hours each week. Home Builder made no fund contributions on Williams's behalf because it did not consider him to be a carpenter. Home Builder contracted with the same carpenters regularly because of familiarity with their work and an established business relationship, but the carpenters also performed carpentry for other companies. Most of Home Builder's work was subcontracted to Mid County Framers, an organization of three carpenters, and to Vernon LeBlanc, who sometimes hired his relatives to work with him. While the trustees alleged that in fact the carpenters did not work for other builders, the depositions of Home Builder carpenters taken by the trustees do not support this contention. Fed.R.Civ.P. 56(e) provides:

> When a motion for summary judgment is made and supported as provided in these rules, an adverse party may not rest upon the mere allegations and denials of his pleadings, but his response, by affidavits, or as otherwise provided in this rule, must set forth specified facts showing that there is a genuine issue for trial.

The same rule requires us to disregard the unsupported allegations that the price was fixed by Home Builder nonnegotiably; and that the sole source of pay was Home Builder.

The carpenters had full control over the amount of work they did for Home Builder

---

5. Home Builder's wage payments to Bill Bryant, memorialized in Bryant's W–2 forms, remain an anomaly.

and how the work was done. Because they were paid on a unit-price basis, they could sustain economic losses if the unit price did not cover their investment in equipment, tools, compensation for their own work, and payroll for additional hires. They could increase their profit by working quickly and efficiently.

Their investment in the enterprise was comparable to that of any small contractor: they brought to the job their tools, equipment, and expertise. While independent construction contractors often buy the materials they use in advance of payment, Home Builder's practice of furnishing materials was not unusual.[6] Because carpentry is a skilled trade, the carpenters could be self-sufficient. Although they did not advertise for themselves on the Home Builder sites, this failure to advertise did not connote a lack of independence. Small contractors often rely on referrals and long-standing associations to provide them with work. Advertising for them may be an atypical, rather than a routine, practice. The evidence pointed to by the trustees does not contradict or dispute the Home Builder evidence. The question is whether, taking into account *all* of the evidence, none of which is mutually contradictory, what conclusion is to be drawn. Thus the dispute is not about material facts but about the inference they support. We agree with the district court that the evidence showed the carpenters to be independent contractors, and not Home Builder employees.

It may be that, in reality, the contract price was fixed at a rate that made it the equivalent of hourly pay and that the carpenters were in effect but piece-rate employees. But this cannot be established by judicial supposition. If this were the case, it must be demonstrated by evidentiary material sufficient at least on its face to warrant trial. Such evidentiary material is simply lacking.

## II.

The trustees complain of a lack of notice and an opportunity to respond properly to Home Builder's renewed motion for summary judgment. The rule that ten days must elapse between the filing of a summary judgment motion and the hearing on the motion "is intended to give the opposing party opportunity to prepare responsive pleadings and counter affidavits."[7] The trustees were not denied that opportunity. Home Builder's renewed motion for summary judgment was based on the same ground it had urged previously, the only real issue in this case—whether the carpenters were independent contractors or employees. The trustees had already filed a written response to this motion. Although they did not submit affidavits or additional depositions, they had the opportunity to do so. The trustees argue that we insist on adherence to the procedural requirements of Fed.R.Civ.P. 56(c) when the trial court enters judgment *sua sponte*,[8] but their position is not analogous to that of a party against whom summary judgment is peremptorily entered.[9] The trial judge had already once followed the procedures set out in Rule 56(c). He retained discretion to

6. Don Lightfoot, Home Builder's president, was also president and sole shareholder of Orange County Building Materials, a company that sold construction materials at retail.

7. *Thacker v. Whitehead,* 548 F.2d 634, 636 (6th Cir.1977) (per curiam).

8. *E.g., Underwood v. Hunter,* 604 F.2d 367, 369 (5th Cir.1979) (strict compliance with Fed.R. Civ.P. 56 required when trial court *sua sponte* converts motion to dismiss into summary judgment motion by considering matters outside pleadings); *Sharlitt v. Gorinstein,* 535 F.2d 282, 283 (5th Cir.1976) (error to enter summary judgment on counterclaim on basis of summary

judgment entered on plaintiff's claim without motion for summary judgment and notice and opportunity to develop defense).

9. *Compare Hanson v. Polk County Land, Inc.,* 608 F.2d 129 (5th Cir.1979) (when defendants made oral motion for summary judgment at pretrial conference and during second conference that same day, trial court granted motion, and parties disagree about whether plaintiffs objected to procedure, trial court judgment reversed for failure to require written motion and to follow notice and hearing requirements of Fed.R.Civ.P. 56(c)).

vacate the order denying summary judgment and to enter a contrary order.[10] The trustees were not surprised by the renewed summary judgment motion. They did not consider themselves at the time unprepared to respond to it. They elected to argue the motion orally, and apparently did not feel the need to request time to prepare pleadings or affidavits. Under these circumstances, the trial judge's failure, on his own initiative, to grant them yet more time to submit written pleadings and affidavits was not reversible error.

■ Normally a party who fails to object to trial court errors waives the right to complain of them on appeal.[11] We are particularly disposed to see the trustees' failure to object in this case as a waiver because they have not shown that they were prejudiced by lack of time to prepare a written response to Home Builder's motion.[12] If there was any error in the trial court's ruling on Home Builder's orally renewed motion for summary judgment, the trustees waived their right to assert it by failing to make a timely objection. A party is entitled to a day in court and a fair trial. To require the district court to give every party who loses another day and thus to grant the loser a replay would be unfair to the party who was prepared and who prevailed.

### III.

For these reasons, the district court judgment granting summary judgment for Home Builder is AFFIRMED.

■

10. *United States v. Horton,* 622 F.2d 144, 148 (5th Cir.1980) (per curiam) (denial of summary judgment has no res judicata effect and can be reconsidered); *Bon Air Hotel, Inc. v. Time, Inc.,* 426 F.2d 858, 862 (5th Cir.1970) (successor district judge did not abuse discretion in vacating prior order denying summary judgment and entering order granting summary judgment).

11. 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2472 (1971); 5A J. Moore & J. Lucas, Federal Practice ¶ 46.02 n. 8 (2d ed. 1982). *See* Fed.R.Civ.P. 46.

12. *Accord Hoopes v. Equifax, Inc.,* 611 F.2d 134, 137 (6th Cir.1979) (on day of trial, after pretrial conference, when defendant made oral motion for summary judgment, trial judge questioned plaintiff in detail and allowed plaintiff opportunity to show whether there were disputed questions of fact; because plaintiff did not show prejudice, grant of summary judgment not reversible error); *Thacker v. Whitehead,* 548 F.2d 634, 636 (6th Cir.1977) (per curiam) (when oral argument in which plaintiff participated was heard three days after summary judgment motion filed, plaintiff did not request additional time to file affidavits, and judgment entered next day, grant of summary judgment was not reversible error because no prejudice shown); *Spence v. Latting,* 512 F.2d 93, 97 (10th Cir.1975), *cert. denied,* 423 U.S. 896, 96 S.Ct. 198, 46 L.Ed.2d 129 (1976) (when plaintiff did not object to oral argument held four days after defendant's motion for summary judgment was filed, actively participated in argument and filed written brief and affidavits, and no prejudice shown, plaintiff waived objection to technical irregularity, and entry of summary judgment was not reversible error); *United States v. Miller,* 318 F.2d 637, 639 (7th Cir.1963) (when plaintiff-intervenor, was informed by government response to her motion to intervene that government had pending summary judgment motion against plaintiff, and she did not object at hearing twenty-three days later to government's oral motion to include her in summary judgment, she waived right to insist on ten days' written notice, and entry of summary judgment against her was not reversible error). *See* 6 J. Moore, W. Taggart, & J. Wicker, Federal Practice ¶ 56.14[1] (2d ed. 1982); 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure: Civil 2d § 2719 (2d ed. 1983) (procedural defect in ruling on summary judgment motion waivable and subject to harmless error rule).

We have examined carefully the two affidavits filed in support of the motion for a new trial. While they controvert a few of the facts relied upon by the district judge, the contradictions are relatively minor and most of the salient facts would stand undisputed even had these been timely filed.