James HEARN, et al., Plaintiffs,

v.

INTERNAL REVENUE AGENTS, et al., Defendants.

Civ. A. No. 3–84–0820–H.

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 15, 1985.

Merle R. Flagg, Dallas, Tex., Donald W. MacPherson, Phoenix, Ariz., for plaintiffs.

Louise P. Hytken, Atty., Tax Div., Dept. of Justice, Dallas, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

This case is before the court on Plaintiffs' Supplemental Allegations Pursuant to the Court's Order Dated April 3, 1985, filed April 24, 1985; Defendants' Response to Plaintiffs' Supplemental Allegations and Renewed Motion to Dismiss or for Summary Judgment, filed May 15, 1985; Defendants' Supplemental Motion for Summary Judgment, filed July 5, 1985; Plaintiffs' Response to Defendants' Renewed Motion to Dismiss or For Summary Judgment (Immunity Issue), filed August 9, 1985; Plaintiffs' Response to Defendants' Supplemental Motion for Summary Judgment (Damages and Standing), filed August 16, 1985; Plaintiffs' Supplemental Response to Defendants' Motion for Summary Judgment Re: Qualified Immunity, filed August 19, 1985; Plaintiffs' Response to "Defendants' Renewed Motion for Partial Summary Judgment with Respect to Plaintiffs' Claims Under the First, Fifth, and Ninth Amendments, filed August 22, 1985; Defendants' Reply to Plaintiffs' Response to Defendants' Supplemental Motion for Sum-

mary Judgment (Damages and Standing), filed August 30, 1985; Defendants' Reply to Plaintiffs' Response to Defendants' Renewed Motion to Dismiss or for Summary Judgment and to Plaintiffs' Supplemental Response to Defendants' Motion for Summary Judgment Regarding the Qualified Immunity Issue, filed September 6, 1985; Defendants' Supplement to Motion for Summary Judgment Re Damages and Standing, filed October 3, 1985; and Plaintiffs' Notice of Action to Reinstate Corporate Status of Worldwide Capital Management Corporation, filed October 4, 1985.[1]

### Factual Background

Plaintiffs, a Texas corporation and two Texas residents, assert a variety of constitutional claims in this lawsuit, all of which stem from a search of Plaintiff World Capital Management, Inc.'s ("WCM") offices by Internal Revenue Service ("IRS") agents on May 8, 1984. Fifty to sixty thousand documents were seized during the search by the IRS. (The search and seizure are described in detail in the Court's Opinion of January 29, 1985.) Plaintiffs have named the agents and employees of the IRS connected with that search and seizure as defendants in this *Bivens* action.[2]

### Procedural Background

This action was originally filed on May 22, 1984. At that time, Plaintiffs sought injunctive relief including return of the seized material, and suppression of any information the IRS had seized "in any civil or criminal proceedings against Plaintiffs". On May 23, 1984, the Court required Defendants to furnish Plaintiffs copies of all documents seized. Plaintiffs later amended their complaint to seek damages under an assortment of constitutional tort theories.

On October 9, 1984 the Court denied Plaintiffs' Application for a Preliminary In-

junction. Defendants then moved for summary judgment. With respect to all claims except the Fourth Amendment claims, Defendants moved to dismiss for lack of specificity. This motion was denied by the Court; however, the Court directed Plaintiffs to provide a more definite statement of these claims. Since the Court held that "the search of the premises of Worldwide Capital Management was not unreasonable", Order, January 29, 1985, at 6, a conclusion reaffirmed by the Court in its April 3, 1985 Opinion, the Fourth Amendment claims were narrowed to those unrelated to the manner in which the search was conducted. In response to Defendants' assertion of qualified immunity, and in conformity with *Elliott v. Perez*, 751 F.2d 1472 (5th Cir.1985), the Court directed Plaintiffs to file "a detailed complaint alleging with particularity all material facts ... supporting the contentions that the plea of immunity cannot be sustained." Order, April 3, 1985, at 2, quoting *Elliott, supra*, at 1482. On April 24, 1985, the Plaintiffs filed their Supplemental Allegations, firing the opening salvo in the paper battle which has produced the weighty materials before the Court today. Defendants renewed their motions for summary judgment, and the Court's files soon bulged with the documents listed above.

The parties' numerous motions and responses present three groups of issues to the Court. First, have Plaintiffs made sufficient allegations to overcome Defendants' assertion of qualified immunity? Second, do Plaintiffs have standing to make Fourth Amendment claims? Third, have Plaintiffs stated a claim for violation of their First, Fifth, or Ninth Amendment rights?[3]

### Qualified Immunity

The Court, in an order dated April 3, 1985, required Plaintiffs to allege, for each

---

**1.** These documents make up almost two inches of the 5½ inches of motions and pleadings currently on file in this case.

**2.** Plaintiffs sought to add as defendants the spouses of the named Defendants. The Court denied this request, Order, July 31, 1984.

**3.** An additional issue is raised by the parties with respect to damages. Because of the Court's resolution of the other issues, it was not necessary to reach that question.

Defendant, the specific acts which violated Plaintiffs' rights. Such allegations were necessary to overcome the Defendants' assertion of qualified immunity. *Elliot v. Perez*, 751 F.2d 1472 (5th Cir.1985). Plaintiffs admit they have not done so with respect to Defendants Robert E. Kurtz, Glenn Cagle, D. Lawrence, and Ernest Hernandez. Plaintiffs' Response to Defendants' "Renewed Motion to Dismiss or for Summary Judgment" (Immunity Issue) at 2. Accordingly, the complaint should be dismissed as to those four Defendants.

Plaintiff WCM's claims against all Defendants are similarly unsupported. This Court has previously ruled that the search of WCM's offices was conducted in a reasonable and lawful manner. Order, filed January 29, 1985. While Hearn and Williams allege seizure of items outside the scope of the warrant,[4] WCM does not allege any seizure of items outside the scope of the warrant. Since WCM has failed to allege a Fourth Amendment violation, Defendants are entitled to dismissal on WCM's Fourth Amendment claims.

■ Plaintiffs contend that they have alleged sufficient facts to overcome the remaining Defendants' assertion of qualified immunity. Qualified immunity attaches unless the Defendants' "conduct violated clearly established constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 2738–39 and n. 32, 73 L.Ed.2d 396 (1982); *Rutherford v. United States*, 702 F.2d 580, 584 (5th Cir.1983). In order to impose personal liability, therefore, Plaintiffs must show not only that the seizure of specific items was illegal but that it was so illegal as to violate clearly established law. *Saldana v. Garza*, 684 F.2d 1159, 1163 (5th Cir.1982). Even as-

suming that the rolodex cards, appointment book, business cards, brochure, envelopes, etc. were, as Plaintiffs allege, illegally seized,[5] Plaintiffs have not alleged facts showing that the seizure violated clearly established law. The appointment book, rolodex and business cards were, for example, not so unrelated to identification of clients as to put their seizure outside the scope of clearly established Fourth Amendment law.

It is not the role of the Court to second guess every decision of the IRS agents. "The underlying policy which pervades every qualified immunity analysis is one of protecting the public by permitting its decision-makers to function without fear that an exercise of discretion might in retrospect be found to be error". *Cruz v. Beto*, 603 F.2d 1178, 1183 (5th Cir.1979). *Saldana*, 684 F.2d at 1166. Since this Court has already held that the search was conducted in a reasonable and legal manner, Plaintiffs must allege more than the simple fact of seizure to overcome Defendants' qualified immunity. Since Plaintiffs have failed to allege sufficient facts to defeat Defendants' qualified immunity, Defendants are entitled to summary judgment on the Fourth Amendment claims.[6]

### Standing

■ Defendants assert that all three Plaintiffs lack standing to bring this action. Plaintiff WCM is alleged to no longer be a corporation in good standing due to a failure to pay its Texas franchise tax. If true, this would bar WCM from maintaining an action in the Texas courts. V.T.C.A. Tax Code § 171.252 (Vernons 1982). The Texas Tax Code does not bar use of the federal courts in disputes over federal constitution-

---

4. Plaintiffs have requested, and received, return of some items pursuant to the Court's Order of October 9, 1984. In addition, Plaintiffs allege the seizure of certain other items whose return they have not yet requested.

5. Plaintiffs' oft-repeated example of a rolodex card with this Court's address and phone number, or that of President Reagan, being seized establishes nothing; had such a card existed it

would have been no more improper for the IRS agents to seize it than it was for them to take any other cards.

6. Plaintiffs have provided several conclusory affidavits which purport to show that the affidavits supporting the search warrant were recklessly made. These are clearly insufficient.

al rights.[7] 6 Wright & Miller *Federal Practice and Procedure: Civil* § 1561 (1971).

■ Defendants contend that Hearn and Williams lack standing to assert Fourth Amendment claims because of their undisputed status as independent contractors.[8] Hearn Deposition at 38–40; Williams Deposition at 9.[9] The test for standing for Fourth Amendment claims is whether the individual has a "legitimate expectation of privacy". *Dickens v. Lewis*, 750 F.2d 1251, 1254 (5th Cir.1984); *United States v. Renton*, 700 F.2d 154 (5th Cir.1983); *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). The central issue is therefore how Plaintiffs' independent contractor status affects the existence of that expectation.

Employees and independent contractors differ in a number of important ways. An employer who hires an independent contractor, rather than an employee, to perform a particular task is able to treat the hired individual differently: the employer is not required to pay or deduct FICA, unemployment, or income taxes for the individual; the contractor is not within a wide variety of federal statutes covering labor relations and wages; workers' compensation statutes are inapplicable; and the employer has reduced tort liability for the acts of the hired individual.

Similarly the independent contractor's relationship with his employer differs from an employee's. Generally, the contractor is not subject to the orders of the employer with respect to the details of the work and he is free to offer his services to the public.

■ The crucial distinction between independent contractors and employees, with respect to the creation of a legitimate expectation of privacy, is the independence of the contractor-employer relationship. An employee yields a greater degree of control over his work to his employer; in return, the employee is protected by his employer, including the provision of a workspace in which he has a legitimate expectation of privacy. An employee is "entitled to expect that he would not be disturbed except by personal or business invitees, and that records would not be taken except with his permission or that of his … superiors." *Mancusi v. DeForte*, 392 U.S. 364, 369, 88 S.Ct. 2120, 2124, 20 L.Ed.2d 1154 (1968). The same is not true of an independent businessperson. The Fifth Circuit has held that an individual has "no legitimate expectation of privacy in the premises of a business belonging to others."[10] *Dickens*, 750 F.2d. at 1254. It is axiomatic that an independent contractor's employer is a separate business entity. Even when he performs services in his employer's offices, as Williams did, an independent contractor is on the premises of another's business. Since neither Hearn nor Williams had a sufficient relationship with WCM to create a legitimate expectation of privacy, neither has standing to assert a Fourth Amendment

**7.** Defendants rely on *Waggener Paint Company v. Paint Distributors*, 228 F.2d 111 (5th Cir. 1955), which applied a similar provision of the Texas Business and Commerce Code to causes of action arising out of intrastate activity. Defendants concede that WCM has standing if § 171.252 does not apply. Reply to Plaintiffs' Response to Defendants' Supplemental Motion for Summary Judgment (Damages and Standing), at 7.

**8.** Hearn was WCM's president and its sole shareholder. His status as an officer and shareholder is not enough to create a legitimate expectation of privacy. *United States v. Evans*, 572 F.2d 455 (5th Cir.1978), *reh. den.*, 576 F.2d 931, *cert. denied, Gent v. United States*, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978).

**9.** Where the status of an individual as an independent contractor is undisputed by the parties, the determination of the status is a question of law for the court. 41 Am.Jur.2d Independent Contractors § 53. The Court has reviewed the pleadings, depositions and affidavits of Hearn and Williams, considered the factors listed in *Trustees of Sabine Area Carpenters' Health & Welfare Fund v. Don Lightfoot Home Builder, Inc.*, 704 F.2d 822, 825 (5th Cir.1983), and concurs in the parties' characterization of Hearn and Williams' status.

**10.** WCM, of course, belonged to Hearn. As noted above, Hearn's ownership was insufficient to create in *him*, as opposed to in the corporation, any legitimate expectation of privacy. Note 8, *supra*.

claim.[11] To the extent those claims were not resolved on the qualified immunity issue they should be dismissed.

### Constitutional Claims

■ All three Plaintiffs' First, Fifth, and Ninth Amendment claims are without either factual or legal basis. Plaintiffs allege that the seizure of a copy of a newsletter, a rolodex, an appointment book, a number of business cards and other unspecified materials have prevented them from exercising their "associational rights". Plaintiffs additionally allege that various private individuals have refused to associate with Plaintiffs because of the search.[12] Plaintiffs provide no authority for the proposition that the seizure of these items violated any recognized First Amendment rights. Even if true, Plaintiffs' allegations fail to allege a constitutional violation.

■ Similarly, Plaintiffs fail to state a basis for their Fifth Amendment claim other than that the IRS allegedly plans to use the seized material in a criminal prosecution of Plaintiffs. Should such a prosecution take place, Plaintiffs will have ample opportunity to assert their rights at that time.[13] Plaintiffs simply do not allege facts which constitute a tortious violation of their Fifth Amendment rights which can be addressed in this *Bivens* action.

■ Finally, Plaintiff's Ninth Amendment claims are utterly without legal merit. The purpose of the Ninth Amendment is to guarantee to individuals those rights inherent to citizenship in a democracy which are not specifically enumerated in the Bill of Rights. *U.S. v. Cook*, 311 F.Supp. 618 (W.D.Pa.1970). Plaintiffs provide no support for their contention that there exists "a right to free enterprise" or a "right to do business", or assuming *arguendo* that such rights exist, that they are fundamental rights. *See, e.g., Davis v. Firment*, 269 F.Supp. 524 (E.D.La.1967), *aff'd*, 408 F.2d 1085 (5th Cir.1969); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, *rehearing denied*, 410 U.S. 959, 93 S.Ct. 1409, 35 L.Ed.2d 694 (1973).[14] Plaintiffs also assert a privacy claim based on some combination of the First, Fifth and Ninth Amendments; it is unclear at this point on exactly what basis their privacy claim rests. To the extent that there is such a claim, it too is baseless. No authority is provided to support the extension of privacy rights which have previously centered on family relationships and procreation. *See, e.g., Roe v. Wade, supra.*

---

11. Hearn did not maintain an office at the WCM's headquarters, Hearn Deposition at 14. Instead, he worked at home and while traveling. Hearn Deposition at 98. Hearn had been at WCM's office only 10 to 14 days during the first five months of 1984. When Hearn was in the office, he used "whatever office space was available when [he] came in." Hearn Deposition at 98. Further, the documents Hearn alleges were seized were taken from the file room, not from an office. Even if Hearn had been an employee, he would have had no legitimate expectation of privacy in a common area like the file room.

12. Plaintiffs' demand for government intervention in the market here, based on the First Amendment, is inconsistent with their claim under a proposed Ninth Amendment "right to free enterprise", a right which must rest, if on anything, on the free operation of market forces. The refusal of individuals to associate with Plaintiffs after the search presents an example of the free market in action. Individuals, acting on the basis of the information available to them, reduced their demand for the goods Plaintiffs supply. Market forces produced a new equilibrium between supply and demand, less satisfactory to Plaintiffs than the previous equilibrium.

13. Hearn was not present during the search and Williams declined to be interviewed after he was given a noncustodial *Miranda* warning.

14. Defendants have failed to elaborate the specific content of their claimed 'free enterprise' right. The Court notes the numerous decisions of the United States Supreme Court, and all Circuits, upholding government regulations of and intervention in the United States economy as persuasive evidence that no such fundamental right exists. *See, e.g., Doherty v. U.S.*, 94 F.2d 495 (8th Cir.1938), *cert. denied*, 303 U.S. 658, 58 S.Ct. 763, 82 L.Ed. 1117 (upholding Federal Reserve System) and *Oklahoma-Texas Trust v. Securities & Exchange Commission*, 100 F.2d 888 (10th Cir.1939) (upholding the Securities and Exchange Act of 1934), both of which restricted individuals' ability to conduct business.

Further, the Court notes that subpoenas, summons and the like have been held not to violate the Ninth Amendment. *U.S. v. Silkman*, 543 F.2d 1218 (8th Cir.1976), *cert. denied*, 431 U.S. 919, 97 S.Ct. 2185, 53 L.Ed.2d 230; *U.S. v. Horton*, 452 F.Supp. 472 (1978), *aff'd*, 629 F.2d 577 (9th Cir. 1980). In *U.S. v. Riddick*, 519 F.2d 645 650 (8th Cir.1975), *cert. denied*, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976), the Eighth Circuit held that "where lawful legal processes have been employed ... we cannot say that the necessary expectation of privacy has been shown warranting a valid constitutional attack." [citations omitted]. Although *Riddick*'s facts differ from this case, the Court is satisfied that the same principle controls the result here.

Accordingly, for these reasons, Defendants' Motion for Summary Judgment is hereby GRANTED.

SO ORDERED.