IN THE SUPREME COURT OF MISSISSIPPI
NO. 95-KA-00983-SCT

*MILTON E. WATTS a/k/a MILTON EIFF WATTS a/k/a*
*MILTON SMITH*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/13/95 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | ISSAQUENA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KAY S. BEENE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT S. FLYNN |
| DISTRICT ATTORNEY: | G. GILMORE MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 7/23/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/17/98 |

BEFORE PRATHER, C.J., BANKS AND SMITH, JJ.

SMITH, JUSTICE, FOR THE COURT:

¶1. Milton Watts was indicted by the Issaquena County Grand Jury for the crime of murder in violation of Miss. Code Ann. § 97-3-19 and for the crime of armed robbery in violation of Miss. Code Ann. § 97-3-79. On April 3, 1995, Watts was tried by jury in the Issaquena County Circuit Court, and a verdict was rendered finding Watts guilty of depraved heart murder and armed robbery. The trial court imposed a sentence of life imprisonment for the crime of murder, and at a later sentencing hearing, the trial court imposed a thirty-five year sentence for armed robbery, to run consecutive to the life imprisonment sentence. Aggrieved, Watts, now appeals to this Court and raises the following issues:

> **I. WHETHER WATTS' CONVICTION SHOULD BE REVERSED AND REMANDED DUE TO THE ABSENCE OF A FULL, ACCURATE AND COMPLETE TRANSCRIPT OF THE TRIAL PROCEEDINGS IN THIS CAUSE.**

**II. WHETHER THE TRIAL COURT ERRED BY ALLOWING THE STATE TO PROCEED ON THE INDICTMENT CHARGING WATTS WITH SIMPLE MURDER AND ARMED ROBBERY BASED ON THE SAME SET OF FACTS.**

**III. WHETHER THE TRIAL COURT ERRED BY DENYING WATTS' MOTION FOR DIRECTED VERDICT BASED ON THE WEATHERSBY RULE.**

**IV. WHETHER THE TRIAL COURT ERRED BY DENYING WATTS' MOTION IN LIMINE TO EXCLUDE TESTIMONY ABOUT WATTS' PURCHASE OF CRACK COCAINE.**

## FACTS

¶2. During the late evening hours on July 23, 1994, W. P. "Jake" Shivers was murdered in the bathroom of his trailer at Mims Mitchell Hunting Club in Issaquena County. Milton Watts was employed by Shivers to help him with odd jobs since Shivers was partially handicapped after an accident with a hay bailer. According to Watts, on July 23, 1994, Watts accompanied Shivers to the hunting camp to do some work at Shiver's trailer. After arriving at the hunting camp, Shivers and Watts decided to go fishing and fished until dark. Watts and Shivers returned to the trailer after fishing where they cleaned and cooked the fish for supper. After supper, Shivers asked Watts to go downstairs and bring him his gun so that Shivers could clean it. Watts then went downstairs, smoked a cigarette, retrieved the gun, and took it back upstairs. When Watts returned to the trailer, he called Shivers name aloud but received no response. Watts then walked down the hallway towards the bedroom calling Shivers' name, and when he reached the bathroom, a jug came up and hit the gun. Watts reaction was that he pulled the trigger of the gun he was carrying and shot Shivers a total of ten times with the .22 caliber rifle. After shooting Shivers, Watts cut the phone lines in the trailer, took Shivers' wallet and truck keys and the gun, left the trailer, and went to Yazoo City in Shivers' truck. Watts threw Shivers' wallet out about four miles from the trailer after removing the money in it and disposed of the gun alongside Highway 3 about four or five miles north of Yazoo City. Watts stayed in Yazoo City at an abandoned house until he turned himself in at the Yazoo County Sheriff's Department.

¶3. The Yazoo County Sheriff's Department recovered Shivers' stolen truck two days prior to Watts' turning himself in and confessing. On July 27, 1994, Watts went to the Yazoo County Sheriff's Department and asked to speak to the sheriff. After being read his rights, Watts gave a voluntary statement concerning the shooting of Shivers in Issaquena County, but Watts claimed that it was an accident and that he did not intend to kill Shivers. Watts was then arrested by the Yazoo County Sheriff's Department for Shivers' murder.

## DISCUSSION OF THE LAW

**I. WHETHER WATTS' CONVICTION SHOULD BE REVERSED AND REMANDED DUE TO THE ABSENCE OF A FULL, ACCURATE AND COMPLETE TRANSCRIPT OF THE TRIAL PROCEEDINGS IN THIS CAUSE.**

¶**4.** Watts asserts that his conviction and sentence should be reversed due to the absence of a full, accurate and complete transcript of the trial proceedings below, and therefore, he has been deprived

of his right to meaningful appellate review. The State, however, contends that Watts is not prejudiced by the missing parts of the record and that a mistrial is not necessitated where this Court can fully review all of the alleged errors assigned by Watts with the record that exists not before the Court.

¶5. Ruth Bell-Green was the official court reporter responsible for preparing the record of the trial in this cause. However, because of a physical disability, Bell-Green retired and was unable to complete the record in this cause. Another reporter, LaLisa Ledlow Linemann, was assigned to complete the record for appeal but was unable to decipher Bell-Green's shorthand notes and was forced to rely on cassette tapes to complete the record. However, the cassette tapes were incomplete, and therefore, portions of the trial were unable to be transcribed. The portions that are missing from the record include voir dire, a portion of Watts' cross-examination and re-direct examination, and closing arguments of counsel. The trial judge completed a bill of exceptions summarizing the missing portions of Watts' cross-examination and re-direct examination. Watts made no objections to the bill of exceptions.

¶6. While this Court has never addressed this issue before, the Mississippi Rules of Appellate Procedure and caselaw from other jurisdictions provide guidance. Rule 11(c) of the Mississippi Rules of Appellate Procedure requires that when a defendant timely and properly perfects an appeal, it is the duty of the court reporter to prepare and file a transcript and to certify the transcript as an accurate account of the proceedings. M.R.A.P. 11(c). In addition, Rule 10(c) provides for the procedure to supplement the record when portions of the trial proceedings are missing as follows:

> If no stenographic report or transcript of all or part of the evidence or proceedings is available, the appellant may prepare a statement of the evidence or proceedings from the best available means, including recollection. The statement should convey a fair, accurate, and complete account of what transpired *with respect to those issues that are the bases of appeal.* The statement, certified by the appellant or his counsel as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 60 days after filing the notice of appeal. Upon filing the statement, the appellant shall simultaneously serve notice of the filing on the appellee, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal. If the appellee objects to the statement as filed, the appellee shall file objections with the clerk of the trial court within 14 days after service of the notice of the filing of the statement. Any differences regarding the statement shall be settled as set forth in subdivision (e) of this Rule.

M.R.A.P. 10(c) (emphasis added). In the instant case, Watts failed to comply with Rule 10(c) and prepare a statement of the missing portion of the proceedings to complete the record. This Court has held on numerous occasions that "'it is the duty of the appellant to see that the record of the trial proceedings wherein error is claim[ed] is brought before this Court.'" *Jackson v. State*, 684 So. 2d 1213, 1226 (Miss. 1996) (quoting *Smith v. State*, 572 So. 2d 847, 849 (Miss. 1990)); *see also Burney v. State*, 515 So. 2d 1154, 1160 (Miss. 1987); *Robinson v. State*, 345 So. 2d 1044, 1045 (Miss. 1977). However, Watts does not claim any error from the proceedings, i.e., voir dire, closing arguments, and portions of the testimony of the defendant, which are missing from the record, and therefore, we find that Watts is not prejudiced by the unfortunate missing portions of the record and, thus, reversal is not required.

¶7. Watts, however, contends that the mere fact that portions of the trial are missing makes a truly accurate and meaningful review impossible and that the fact that gaps exist at all entitles him to a new trial despite the lack of an ability to show specific prejudice from the missing portions. In support of his argument, Watts cites to *United States v. Carrillo* in which the Ninth Circuit Court of Appeals held that "[a] criminal defendant has a right to a record on appeal which includes a complete transcript of the proceedings at trial." *United States v. Carrillo*, 902 F.2d 1405, 1409 (9th Cir. 1990) (citing *Hardy v. United States, 375 U.S. 277, 279-82 (1964)*). However, the Ninth Circuit, in *Carrillo*, further stated that "while court reporters are required by the Court Reporters Act, 28 U.S.C. § 753(b)(1) (1982), to record verbatim all proceedings in open court, their failure to do so does not require a per se rule of reversal. . . . Rather, some prejudice to the defendant must occur before reversal will be contemplated." *Carrillo*, 902 F.2d at 1409 (citing *United States v. Doyle*, 786 F.2d 1440, 1442 (9th Cir. 1986)). The Ninth Circuit declined to find reversible error as a result of the incomplete record and affirmed Carrillo's conviction absent a showing that he was prejudiced by the missing portion of the record. *Id.* at 1412. Watts additionally cites to *Commonwealth v. Goldsmith* in which the Pennsylvania Supreme Court reversed and remanded for a new trial the conviction of Goldsmith because "meaningful appellate review is impossible absent a full transcript or an equivalent picture of the trial proceedings." *Commonwealth v. Goldsmith*, 304 A.2d 478, 480 (Pa. 1973). However, in the case sub judice, we find that Watts has been afforded an "equivalent picture" of the trial proceedings, for the trial court filed a bill of exceptions summarizing the only missing testimony at trial, i.e., the missing portions of the cross-examination and re-direct examination of Watts, and Watts made no objections to the bill of exceptions as being inaccurate.

¶8. In *United States v. Renton*, 700 F.2d 154 (5th Cir. 1983), the Fifth Circuit Court of Appeals was presented with a factually similar situation as this case presents. In *Renton*, the court reporter who had transcribed the proceedings at Renton's trial died shortly after Renton's appeal was filed and before the proceedings had been transcribed from his shorthand and from the tape recordings of the trial. *Untied States v. Renton*, 700 F.2d 154, 156-57 (5th Cir. 1983). A substitute court reporter was appointed to transcribe the proceedings, but because of the idiosyncracies of the deceased court reporter's shorthand and lost or indecipherable tapes, the substitute court reporter was unable to completely reconstruct a transcript. *Renton*, 700 F.2d at 157. The missing portions of the record included "portions of the argument to the judge concerning admission of co-conspirators' statements, the ability of a witness to testify after having heard portions of the trial, a defense motion, testimony on the final day of evidence, jury arguments and jury instructions." *Id.*

*¶9.* The Fifth Circuit relied on its earlier case of *United States v. Selva*, 559 F.2d 1303 (5th Cir. 1977), to conclude that, absent a showing of specific prejudice by Renton due to the faulty transcript, the case should not be remanded for a new trial. *Renton*, 700 F.2d at 159. The *Renton* Court stated:

> In *Selva*, the court reviewed the pertinent sections in the Court Reporter Act, 28 U.S.C. § 753. The Act requires that the court reporter "record verbatim by shorthand or by mechanical means . . . (1) all proceedings in criminal cases had in open court . . . ." 28 U.S.C. § 753(b). As was stated in *Selva*, "This language is clear, and its requirements are mandatory." 559 F.2d at 1305. Reviewing the pertinent case law, including the Supreme Court decision in *Hardy v. United States, 375 U.S. 277 . . . (1964)*, we held that two dominant rules have evolved in cases involving record omissions:

The first holds that failure to comply with the Act is not error per se and will not work a reversal absent a specific showing of prejudice--i.e., appellant must show that failure to record and preserve the specific portion of the trial proceedings visits a hardship upon him and prejudices his appeal. . . . An examination of the second body of case law reveals that a different rule obtains in cases involving new counsel on appeal. When, as here, a criminal defendant is represented on appeal by counsel other than the attorney at trial, the absence of a substantial and significant portion of the record, even absent a specific showing of prejudice or error, is sufficient to mandate reversal. . . . When a defendant is represented on appeal by the same attorney who defended him at trial, the court may properly require counsel to articulate the prejudice that may have resulted from a failure to record a portion of the proceedings. Indeed, counsel's obligation to the court alone would seem to compel him to initiate such disclosure. The attorney, having been present at trial, should be expected to be aware of any errors or improprieties which may have occurred during the portion of the proceedings not recorded. But when a defendant is represented on appeal by counsel not involved at trial, counsel cannot reasonably be expected to show specific prejudice.

*Renton*, 700 F.2d at 157 (quoting *Selva*, 559 F.2d at 1305-06). The Fifth Circuit held that since Renton was represented by the same counsel on appeal as at trial that Renton was required to show specific prejudice in order to mandate reversal. *Id.* at 158. The Fifth Circuit found that Renton failed to show specific prejudice by the missing portions of the record and declined to remand the case as a result. *Id.* at 159.

¶10. Likewise, in the case sub judice, Watts is represented by the same counsel on appeal as he was at the trial in this case. Therefore, adopting the Fifth Circuit's rationale in *Renton* and *Selva*, Watts is required to show specific prejudice by the missing portions of the record in order to mandate reversal and remand for a new trial. However, Watts does not allege any error from the missing portions of the record or specific prejudice by the missing portions of the record in this case. There is no merit to this issue.

### II. WHETHER THE TRIAL COURT ERRED BY ALLOWING THE STATE TO PROCEED ON THE INDICTMENT CHARGING WATTS WITH SIMPLE MURDER AND ARMED ROBBERY BASED ON THE SAME SET OF FACTS.

¶11. Prior to trial, Watts made a motion before the trial court to have the prosecution declare whether the prosecution would be trying him for simple murder or armed robbery arguing that he could not be tried for both arising out of the same set of facts because to do so would be trying him for capital murder. The trial court denied Watts' motion stating that simple murder was a lesser included offense of capital murder. On appeal, Watts asserts that the trial court erred by allowing the State to proceed on the indictment charging Watts with simple murder and armed robbery and that the jury's verdict and sentencing thereon were inconsistent and constituted reversible error. Watts appears to be arguing that he should have been indicted and tried for capital murder instead of the two separate crimes of simple murder and armed robbery. The State, however, contends that it was within the prosecutor's discretion to charge Watts with both simple murder and armed robbery without seeking the death penalty for a conviction of capital murder and that simple murder is a lesser

included offense of capital murder.

¶12. In support of his argument, Watts cites to two Fifth Circuit Court of Appeals' cases, *Jones v. Thigpen*, 741 F.2d 805 (5th Cir. 1984), 475 U.S. 1003 (1986), and *Bell v. Watkins*, 692 F.2d 999 (5th Cir. 1982), for the theory that "'[i]n Mississippi, no murder committed during the course of a robbery can be a simple murder.'" *Jones v. Thigpen*, 741 F.2d 805, 816 (5th Cir. 1984) (quoting *Bell v. Watkins*, 692 F.2d 999, 1004-05 (5th Cir. 1982)), *vacated on other grounds*, 475 U.S. 1003 (1986). Both *Jones* and *Bell* involved situations in which the trial court refused to give a lesser offense instruction where the defendant was charged with capital murder while engaged in the commission of robbery. *Jones*, 741 F.2d at 815-16; *Bell*, 692 F.2d at 1004-05. In *Jones*, the Fifth Circuit held that the trial court did not commit error by refusing to give a lesser included offense instruction of simple murder where no lesser included offense was provided by state law for murder committed during the commission of a robbery. *Jones*, 741 F.2d at 816. In *Bell*, the Fifth Circuit, stating that under Mississippi law "no murder committed during the course of a robbery can be simple murder," similarly held that the trial court's refusal to give a lesser included offense instruction was proper where there was no evidence to support the lesser charge. *Bell*, 692 F.2d at 1005.

¶13. This Court, however, in *Fairchild v. State*, 459 So. 2d 793 (Miss. 1984), held that this theory was flawed because it presupposed that the defendant was guilty of robbery. *Fairchild v. State*, 459 So. 2d 793, 800 (Miss. 1984). The *Fairchild* Court stated:

> The theory is flawed. It determines what instruction will be granted at the request of the capital murder defendant on the basis of a presumption that he has already been found guilty of the underlying felony. The theory forgets that there is no such thing as a directed verdict of guilty in a criminal case, either on the principal charge in general or on any of its components. Its logic requires the determination that the proof offered by the State where not substantially contradicted must perforce be believed by the jury and so acted upon in their verdict. True, the evidence that Fairchild participated in a robbery in this case is substantial. What the trial judge has done, however--following the theory advanced by the Fifth Circuit--has been to find as a matter of law that Fairchild is guilty of robbery *before the case is ever submitted to the jury*. This constitutionally he has no authority to do.

*Fairchild*, 459 So. 2d at 800. Based on this logic, this Court held that it was error, although not reversible error because Fairchild received the same sentence that he would have received for a conviction of simple murder, for the trial court to refuse to grant a lesser included offense instruction on simple murder. *Id.* at 801. Thus, Watts' reliance on *Jones* and *Bell* is unfounded where this Court has held that a simple murder instruction may be given on a charge of capital murder. In addition, this Court has stated that "[b]y its form, [Miss. Code Ann. § 97-3-19] implicitly recognizes the established doctrine that simple murder is a lesser included offense of capital murder." *Wheeler v. State*, 536 So. 2d 1341, 1344 (Miss. 1988).

¶14. However, Watts does not assign as error the jury instructions given by the judge in this case. On the contrary, Watts challenges the authority of the prosecutor to proceed on a multi-count indictment charging one count of simple murder and one count of armed robbery arising out of the same set of facts. It is a fundamental principle of our criminal justice system that a prosecutor is afforded prosecutorial discretion over what charge to bring in any criminal trial. *See United States v.*

*Batchelder*, **442 U.S. 114, 124 (1979)** ("Whether to prosecute and what charges to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."); ***Bordenkircher v. Hayes***, *434 U.S. 357, 364 (1978)* ("In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."). Furthermore, this Court, in ***Ladner v. State***, 584 So. 2d 743 (Miss. 1991), stated that

> the capacity of prosecutorial discretion to provide individualized justice is "firmly entrenched in American law." As we have noted a prosecutor can decline to charge, offer a plea bargain, or decline to seek a death sentence in any particular case. Of course, "the power to be lenient [also] is the power to discriminate," but a capital punishment system that did not allow for discretionary acts of leniency "would be totally alien to our notions of criminal justice."

***Ladner v. State***, 584 So. 2d 743, 751 (footnote omitted) (citations omitted) (quoting ***McCleskey v. Kemp***, *481 U.S. 279, 311-12 (1987)*). In addition, this Court has specifically held that it was within a prosecutor's discretion to amend an indictment by deleting the language "while engaged in Commission of Armed Robbery" and reducing a charge of capital murder to simple murder. *See* ***Porter v. State***, 339 So. 2d 564, 566 (Miss. 1976). Therefore, we find in the case at bar that it was within the prosecutor's discretion to present charges of simple murder and armed robbery to the grand jury for indictment, and thus, the trial court did not err by allowing the State to try Watts on both counts of the indictment. This assignment of error is without merit.

### III. WHETHER THE TRIAL COURT ERRED BY DENYING WATTS' MOTION FOR DIRECTED VERDICT BASED ON THE WEATHERSBY RULE.

¶15. At the close of the prosecution's case-in-chief, Watts made a motion for directed verdict based on the familiar Weathersby rule contending that the evidence did not contradict Watts' version through his voluntary statements that the shooting was an accident. The trial court overruled the motion stating that there was a conflict between the physical evidence presented by the State and Watts' version of an accidental shooting. Watts renewed his motion for directed verdict at the conclusion of all of the evidence which also was overruled by the trial court. The substance of the point was finally presented to the trial court by way of a portion of Watts' Motion for a New Trial and or in the Alternative for Judgment of Acquittal Notwithstanding the Verdict of the Jury which was denied on August 4, 1995. Watts contends that the trial court erred by denying his motion for a directed verdict based on the Weathersby rule. The State argues that the trial court did not err by denying the motion because the physical evidence sufficiently contradicted Watts' version of an accidental shooting.

¶16. Watts' assignment of error essentially amounts to a challenge to the sufficiency of the evidence presented by the State. *See* ***Harveston v. State***, 493 So. 2d 365, 370 (Miss. 1986). This Court set forth the applicable standard of review for such challenges in ***Green v. State*** as follows:

> This Court must consider all the evidence in the light most favorable to the State with respect to each element of the offense. ***Harveston***, 493 So. 2d at 370; ***Fisher v. State***, 481 So. 2d 203, 212 (Miss. 1985); ***Callahan v. State***, 419 So. 2d 165, 174 (Miss. 1982). The credible evidence which is consistent with the verdict must be accepted as true, ***Spikes v. State***, 302 So. 2d 250, 251 (Miss. 1974), and the State has to be given the benefit of all favorable inferences which

may be reasonably drawn from the evidence presented. ***Harveston***, 493 So. 2d at 370; ***Hammond v. State***, 465 So. 2d 1031, 1035 (Miss. 1985); ***Glass v. State***, 278 So. 2d 384, 386 (Miss. 1973). This Court may reverse the lower court's conviction only where the evidence is such that reasonable and fair-minded jurors could only find the defendant not guilty. ***Harveston***, 493 So. 2d at 370; ***Fisher***, 481 So. 2d at 212; ***Cook v. State***, 467 So. 2d 203, 208-09 (Miss. 1985).

***Green v. State***, 614 So. 2d 926, 932 (Miss. 1992).

¶17. The heart of Watts' contention that the trial court erred by denying his motion for directed verdict is based on the commonly referred to rule of law as the Weathersby rule. In ***Weathersby v. State***, this Court stated:

> [W]here the defendant or the defendant's witnesses are the only witnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.

***Weathersby v. State***, 165 Miss. 207. 209, 147 So. 2d 481, 482 (1933); *see also* ***Wetz v. State***, 503 So. 2d 803, 808 (Miss. 1987); ***Weeks v. State***, 493 So. 2d 1280, 1282 (Miss. 1986); ***Harveston***, 493 So. 2d at 370-71. However, as indicated by the above rule, "[w]here the physical facts and circumstances in evidence materially contradict the defendant's version of what happened, the Circuit Court is not required to direct a verdict under ***Weathersby***. Rather, the matter then becomes a question for the jury." ***Wetz***, 503 So. 2d at 808, 809 (citing ***Harveston***, 493 So. 2d at 371; ***Johnson v. State***, 475 So. 2d 1136, 1148 (Miss. 1985); ***May v. State***, 460 So. 2d 778, 782 (Miss. 1984); ***Johnson v. State***, 346 So. 2d 927, 929 (Miss. 1977)).

¶18. In the case sub judice, Watts voluntarily gave a statement concerning the death of Shivers to the Yazoo County Sheriff's Office claiming that the shooting was an accident. Then, at trial, Watts testified on his own behalf consistent with his earlier statements given to the Yazoo County Sheriff's Office. Watts testified that he and Shivers were having dinner and that after dinner Shivers asked him to go downstairs and retrieve his gun so that Shivers could clean it. Watts testified to going downstairs, smoking a cigarette, and coming back upstairs with the gun. When Watts returned, Shivers was not in the living room, and Watts called his name aloud but received no response. Watts then walked down the hallway, and when he approached the bathroom, Shivers threw a jug at him. According to Watts, the jug hit the gun, he reacted by pulling the trigger, and the gun went "pow, pow, pow, pow, pow." Watts then cut the phone lines, took Shivers' wallet and truck keys from the trailer, and left in Shivers' truck.

¶19. However, the State presented substantial physical evidence that contradicted Watts' accidental shooting theory. The State presented expert testimony from Dr. Emily Ward, the Mississippi State Medical Examiner and Director of the Mississippi Crime Laboratory, that Shivers was shot a total of ten times damaging the lungs, heart, neck, gut and intestines. Dr. Ward further testified that some of the entrance wounds were contact wounds in which the end of the barrel of the gun was less than two inches from the skin and that other wounds were from bullets fired a distance of more than three feet away. More importantly, one of the wounds was in Shivers back and fired from only one inch away. We find that this compeling testimony was more than sufficient evidence to contradict Watts'

accidental shooting claim. Furthermore, Watts' subsequent actions of cutting the phone lines and taking Shivers' wallet and money as well as Shivers' truck substantially contradicted Watts' testimony that the shooting was an accident. Therefore, we hold that the physical evidence introduced by the State was substantial to materially contradict Watts' version of an accidental shooting, and thus, the trial court did not err by denying Watts' motion for directed verdict. This assignment of error is without merit.

### IV. WHETHER THE TRIAL COURT ERRED BY DENYING WATTS' MOTION IN LIMINE TO EXCLUDE TESTIMONY ABOUT WATTS' PURCHASE OF CRACK COCAINE.

¶20. Before trial, Watts filed with the trial court a Motion in Limine requesting the trial court to order the district attorney to refrain from mentioning the purchase of and use of crack cocaine after the homicide. Although the trial court did not enter an order denying Watt's Motion in Limine, the trial court effectively denied the motion when it granted the defense a continuing objection to the introduction of evidence of the purchase of and use of crack cocaine after the homicide. Watts asserts that the trial court erred by denying his Motion in Limine requesting that the State be precluded from introducing evidence at trial regarding Watts' purchase of and use of crack cocaine. Watts contends that the fact of his use of crack cocaine at a point remote in time from the acts charged in the indictment should not have been allowed to be presented to the jury where it was unnecessary to the disposition of the case and highly prejudicial to Watts in the minds of the jury.

¶21. This Court has held that it was error for the trial court to allow evidence regarding the purchase of cocaine with proceeds from the robbery of the murder victim and that when considered together with an accumulation of other errors compelled reversal. *Snelson v. State*, 704 So. 2d 452, 455 (Miss. 1997). The *Snelson* Court specifically held that the evidence was irrelevant and inadmissible under Rule 401 of the Mississippi Rules of Evidence by stating that the introduction of

> the evidence which showed that Snelson bought and used cocaine after he had sold the stolen guns did not have the tendency to make any fact that was of consequence to the determination of whether Snelson killed Stephen Goode more probable or less probable than it would without the introduction of such evidence. . . . It is certainly separable from the main offense and cannot be made a part of whatever is referred to as the "res gestae" of the entire transaction. The evidence was clearly inflammatory and offered for the sole purpose of improperly influencing the jury.

*Snelson*, 704 So. 2d at 455. The *Snelson* Court also found that the trial court committed error by failing to declare a mistrial after the prosecution introduced evidence of other murders that were previously committed even though the trial court instructed the jury to disregard such evidence. *Id.* at 457-58. The Court additionally found that there had been numerous discovery violations by the prosecution in *Snelson* and that all the errors weighed together compelled reversal. *Id.* at 458-59. Thus, in *Snelson* the Court was concerned with three substantial accumulated errors which mandated reversal.

¶22. Although the *Snelson* Court found that evidence which occurred after the robbery and murder that the defendant purchased crack cocaine with the proceeds of the robbery and smoked the cocaine was irrelevant to prove any of the elements of the crimes charged, this Court has held that under

certain circumstances that such evidence is relevant and admissible as a Rule 404(b) exception to prove motive. *Mack v. State*, 650 So. 2d 1289, 1313 (Miss. 1994). In *Mack*, the State presented evidence that Mack had been smoking crack cocaine before the robbery and murder and that he ran out of funds to satisfy his desire to purchase more crack cocaine. *Mack*, 650 So. 2d at 1313. The State presented further testimony that before committing the robbery and murder Mack did not have enough money to purchase more cocaine, that Mack stated he would be back, that Mack then committed the robbery and murder, and that Mack returned with money to purchase more cocaine. *Id.* at 1312. In concluding that admission of the evidence that Mack purchased cocaine with the money from the robbery was harmless error, if any, the Court recognized the effect of Rule 404 is "that evidence of other crimes is not admissible to show that a defendant committed crimes other than the one for which he is on trial." *Id.* at 1311. However, the Court stated:

> There are certain recognized exceptions to the rule. Proof of another crime is admissible where the offense charged and that offered to be proved are so connected as to constitute one transaction, where it is necessary to identify the defendant, where it is material to prove motive and there is an apparent relation or connection between the act proposed to be proved and that charged, where the accusation involves a series of criminal acts which must be proved to make out the offense, or where it is necessary to prove scienter or guilty knowledge.

*Id.* (quoting *West v. State*, 463 So. 2d 1048, 1051 (Miss. 1985)). The *Mack* Court further recognized that "[i]f evidence that a defendant has committed a crime or other bad acts falls within a 404(b) exception, before admitting evidence of the crime or act, the trial judge must weigh the probativeness of the evidence against the prejudicial effect under Rule 403." *Id.* Thus, by recognizing that, under a set of facts where all acts encompass a single transaction, evidence of other crimes or bad acts can be admissible to show motive or one of the other possible exceptions set forth in Rule 404(b), the Court stated:

> This is an area fraught with danger, and prosecutors and trial courts alike should approach with caution any evidence of other crimes offered for the purpose of proving motive for a robbery. Robbery has its own motive--the attainment of something of value. . . . Here, because of the close connection of a specific monetary objective and because of the overwhelming evidence of guilt, we conclude that the error in admitting this evidence, if any, is harmless beyond a reasonable doubt.

*Id.* at 1313.

¶23. In the case sub judice, there was no evidence of a "close connection of a specific monetary objective" to rob and murder Shivers in order for Watts to obtain money to purchase crack cocaine. In addition, Watts filed a Motion in Limine to exclude any evidence about Watts' purchase of crack cocaine. Although the trial court never entered an order denying the motion, the trial court apparently denied the motion by granting the defense a continuing objection to the introduction of the evidence prior to trial. Furthermore, the trial court failed to conduct a Rule 403 analysis of weighing the probative value of the evidence against the prejudicial effect of the evidence to the defendant as required by *Mack* and *Ford*. *See Mack*, 650 So. 2d at 1311; *Ford v. State*, 555 So. 2d at 691, 693(Miss. 1989). Thus, we find that the trial court erred by allowing the prosecution to introduce evidence that Watts used the money taken from Shivers to purchase crack cocaine after the robbery

and murder.

¶24. However, although it was error to allow introduction of the evidence under these facts, we hold that any error was harmless beyond a reasonable doubt because of the overwhelming weight of the evidence against Watts. *See* **Mack**, 650 So. 2d at 1313. In this case, Watts voluntarily turned himself in and gave a statement concerning the shooting and robbing of Shivers but claimed that it was all an accident. Watts' theory of an accidental shooting was overwhelmingly disproved by the compelling testimony of Dr. Ward that Shivers had been shot ten times with the bullets being fired from distances of three feet to less than two inches from Shivers' body. Dr. Ward testified that one of the entrance wounds entered through Shivers' back and created a one-inch circle of stippling abrasions, caused by unburned gunpowder, around the bullet wound. With regard to the distance of the barrel from Shivers' back when this bullet entered, Dr. Ward testified as follows:

> Q. Okay. And the one-inch circle of that entrance wound in the back -- that's the one we're talking about?
>
> A. Yes, sir.
>
> Q. -- indicates to you that the barrel of that weapon was how far away?
>
> A. It's my opinion that the end of the barrel was about an inch away from the skin when the trigger was pulled to create that wound.

Dr. Ward also testified that there was an entrance wound "on the left side of the front of the stomach just above -- a little bit above the belly button. And around this wound there are not stippling abrasions like we talked about here, but there are a few particles of gun powder laying on the skin around it." Dr. Ward testified that this wound would fall into the definition of a close-range wound which would indicate "that the gun was less than three feet away from him when that wound was created." Dr. Ward testified that these two wounds were the only ones in which stippling abrasions were discovered around the bullet's entrance. As to the distance of the other wounds, Dr. Ward testified:

> Q. Okay. You didn't find the stippling on any of the other entrance wounds that you've described?
>
> A. No, sir, we didn't.
>
> Q. Would they, then, be at a distance greater than three feet?
>
> A. Again, that -- that's a conservative estimate, but, yes, sir, somewhere between 18 inches and three feet away.

Furthermore, Dr. Ward testified about the relationship of the position of the entrance wounds as follows:

> Q. Okay. Did you make any determination as to the angle of the -- of any of the wounds?
>
> A. Yes, sir, I did. Most of the wounds went basically straight through his body. The wound on the left side of his chest below the collarbone is traveling at an angle, going from left to right,

because of the little scrape in the skin around the wound. The wounds through the arms are basically going straight through. The wound on the left side of his chin is going a little bit at a downward angle, because it -- it ends up damaging the neck organs, the windpipe and the blood vessels that are in his neck.

Q. So is it -- it's your testimony that some of the wounds that he would have been facing his -- the person firing the shots and others he might have been turned to the side, or do you -- or else the -- the shooter was moving around?

A. Yes, sir, that would -- that would be correct.

Q. And we know that some of the shots were fired into the back?

A. Yes, sir, that's correct.

Q. So some shots were fired straight in, some were from an angle to the -- from his left and some were straight in from the back?

A. That's correct.

Thus, Dr. Ward's testimony indicates that Shivers was shot ten different times from the front, the side, and the back, and the fact that some of the wounds were created when the barrel was at distances of as far away as three feet and as close as one inch to the body overwhelmingly discredits Watts' claim that the shooting was an accident.

¶25. Watts' theory of an accidental shooting was also substantially discredited by his own subsequent actions of cutting the phone lines, taking Shivers' wallet and truck keys, and leaving in Shivers' truck. Watts discarded the wallet after removing Shivers' money at a location a few miles from Shivers' trailer. He disposed of the gun at a different location a few miles north of Yazoo City. Thus, all of these actions following the shooting are not consistent with Watts' claim of an accidental shooting. Therefore, we hold that as a result of Watts' voluntary statement, overwhelming physical evidence and expert testimony that the shooting was not an accident, as well as Watts' inconsistent actions with the shooting being an accident, the error by the trial court of allowing evidence that Watts used the money from the robbery to purchase crack cocaine when he got to Yazoo City was harmless beyond a reasonable doubt. This assignment of error is without merit.

## CONCLUSION

¶26. We affirm the trial court's conviction of Watts for murder with a depraved heart and armed robbery for the following reasons: (1) Watts failed to show specific prejudice or assign any errors from the missing portions of the record; (2) the trial court did not err by allowing the State to proceed on the indictment because it was well within the prosecutor's wide range of prosecutorial discretion to present charges of simple murder and armed robbery to the grand jury; (3) the trial court did not err by denying Watts' motion for directed verdict because there was substantial physical evidence that materially contradicted Watts' version of an accidental shooting; and (4) although the trial court erred by denying Watts' Motion in Limine to exclude evidence of Watts' purchase of crack cocaine with the money taken from Shivers, such error was harmless beyond a reasonable doubt because of the overwhelming evidence of guilt presented by the State.

¶27. **COUNT I: CONVICTION OF DEPRAVED HEART MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT II: CONVICTION OF ARMED ROBBERY WITH A DEADLY WEAPON AND SENTENCE OF THIRTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCE IN COUNT I TO RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT II.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, ROBERTS, MILLS AND WALLER, JJ., CONCUR. SULLIVAN, P.J., CONCURS IN RESULT ONLY.**