GRIFFIS, J., for the Court.
¶ 1. After seventeen years of employment, Emma Cox was terminated from her position as correctional officer with the Mississippi Department of Corrections (“MDOC”). An administrative review hearing was held by MDOC, after which, the hearing officer recommended that Cox be terminated for appearing to be asleep while on duty. Cox appealed the termination to the Employee Appeals Board (“EAB”). After a hearing before an EAB hearing officer, the termination by MDOC was upheld. Cox appealed this decision to the full board of the EAB, where the termination was also upheld. Cox then appealed the EAB’s decision to the Circuit Court of Sunflower County. The circuit court also affirmed MDOC’s decision to terminate Cox. Cox now appeals the decision of the circuit court. She argues that the court erred by affirming the EAB’s decision to terminated when: (1) the EAB did not have the benefit of a complete transcript of the hearing, and (2) substantial evidence does not exist to terminate Cox thereby making the EAB’s decision arbitrary and capricious. We find no error and affirm.
FACTS
¶ 2. Emma Cox held the position of Correctional Officer IV at the Mississippi State Penitentiary in Parchman, Mississippi. On January 11, 2005, Cox was on duty during “yard call.” Deputy Warden John Rogers observed Cox sitting down with both eyes closed. After Cox was unresponsive for about five seconds, Rogers addressed her and asked why she was sitting with her eyes closed. Cox claimed that her eyes were never closed and that she was seated because she was experiencing pain in her legs. The pain was caused by a fall she sustained three days earlier after a prisoner spilled food on the floor.
¶ 3. Following his observation, Deputy Warden Rogers issued a report of the incident and requested that action be taken because Cox did not respond when he walked out into the yard. Cox committed the following Group Three Offenses of the Mississippi State Personnel Board Policy and Procedures Manual:
7. violation of safety rules where there exists a threat to life or human safety;
[[Image here]]
11. an act or acts of conduct occurring on or off the job which are plainly related to job performance and are of such nature that to continue the employee in the assigned position could constitute negligence in regard to the agency’s duties to the public or to other state employees.
¶ 4. The MDOC conducted an administrative review hearing and the hearing officer recommended that Cox be terminated. Her termination became effective on *903 April 7, 2005. The notice stated the following reason for termination:
On January 11, 2005 at approximately 1157 hours, Deputy Warden (DW) John Rogers entered Unit 32 Bravo. During his tour of the building, he observed “yard call” in progress. He then exited the building to monitor the detail, at approximately 1220 hours he observed [Cox] sitting down adjacent to the door. [Cox] had both eyes closed and did not know that DW Rogers had walked out onto the yard. After approximately five (5) seconds, he addressed [Cox] and questioned [Cox] about sitting down during yard call and regarding [Cox’s] eyes being shut.
¶ 5. After her MDOC administrative appeals were exhausted, Cox appealed the termination decision to the Circuit Court of Sunflower County. The circuit court also upheld the termination.
STANDARD OF REVIEW
¶ 6. To dismiss an employee of a state agency, good cause must be shown after the employee is given written notice and the opportunity for a hearing. Holly v. Miss. Dep’t of Corr., 722 So.2d 632(¶ 12) (Miss.1998). “Employees affected by adverse decisions may appeal to the Employee Appeals Board (EAB) for de novo hearing, then to circuit court for judicial review on the record, and finally to this Court.” Id. (citations omitted).
¶ 7. Review of the EAB’s decision “is not de novo, rather, this Court (and any reviewing court) determines whether the Board’s decision was (1) unsupported by substantial evidence, (2) arbitrary and capricious, (3) beyond the powers of the Board to make, or (4) violative of a statutory or constitutional right of [the complaining party].” Harris v. Miss. Dep’t of Corr., 831 So.2d 1105, 1107(¶ 6) (Miss.2002) (citations omitted). However, any questions of law raised on final appeal will be reviewed de novo. McGowan v. Miss. State Oil & Gas Bd., 604 So.2d 312, 317 (Miss.1992).
ANALYSIS

1. Whether the EAB’s en banc decision to uphold Cox’s termination was a violation of due process because its review was conducted without the benefit of the full transcript of the hearing before the EAB hearing officer.

¶ 8. Cox argues that it was a violation of her due process rights for the full board of the EAB to affirm the hearing officer’s decision to terminate her because the board did not have the full transcript of the original hearing. On page ninety-five of the hearing transcript, the court reporter states, “The following record is a portion of the last 23 pages of shorthand notes, which were damaged when Hurricane Katrina took off shingles of my office and I had leaks and ceiling tile which fell on some books, tapes, and papers.”
¶ 9. The cross-examination and re-direct of Officer Hemphill, a fellow correctional officer, is missing from the record. Cox claims that this testimony is essential for her to establish how the decision to terminate her was arbitrary and capricious because other similarly situated employees were treated differently. Also, the majority of Cox’s direct examination is not included in the transcript. Cox claims that, due to the missing portions of the transcript, she was denied the opportunity for a meaningful review by the full EAB thus raising a due process question that would allow this Court to reverse the EAB’s ruling.
¶ 10. Cox filed a motion for a new trial in the circuit court. The court denied the motion finding that Cox had failed to com *904 ply with Rule 10(c) of the Mississippi Rules of Appellate Procedure. The rule, entitled “Statement of the Evidence When No Report, Recital, or Transcript Is Available,” states in part that:
[i]f no stenographic report or transcript of all or part of the evidence or proceedings is available, the appellant may prepare a statement of the evidence or proceedings from the best available means, including recollection. The statement should convey a fair, accurate, and complete account of what transpired with respect to those issues that are the bases of appeal. The statement, certified by the appellant or his counsel as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 60 days after filing the notice of appeal.
M.R.A.P. 10(c). The circuit court held that Cox could have supplemented the record with her own recollection of the missing parts of the hearing. Because she did not do so, the court found that she was not entitled to a new hearing.
¶ 11. The supreme court has considered the issue of an incomplete transcript. In Watts v. State, 717 So.2d 314 (Miss.1998), the court reporter was unable to complete the transcript due to a physical illness. Watts argued that his conviction and sentence should be reversed because the incomplete transcript denied him of his right to meaningful appellate review. Id. at 316 (¶¶ 4-5). However, Watts failed to comply with Rule 10(c) by not submitting a statement of the missing portions of the record. Id. at 317(¶ 6). The court, finding no reversible error, held that “it is the duty of the appellant to see that the record of the trial proceedings wherein error is claimed is brought before this Court.” Id. The supreme court adopted the U.S. Fifth Circuit Court of Appeals’ rule that when an appellant is represented by the same counsel at trial and on appeal, the appellant “is required to show specific prejudice by the missing portions of the record in order to mandate reversal and remand for a new trial.” Id. at 318(¶ 10).
¶ 12. While, unlike Watts, Cox does claim that she was harmed by the missing portions of the record, she has not shown the specific prejudice necessary to warrant reversal on this issue. She was represented by her present counsel at both the hearing before the EAB hearing officer and at the appeal to the circuit court. No attempt was ever made to supplement the incomplete transcript.
¶ 13. Cox claims that prejudice against her exists because the missing testimony was crucial to prove that her termination was arbitrary and capricious. According to her, the testimony of Officer Hemphill and her own direct testimony established that, on a previous occasion, other MDOC employees appeared to be asleep while on duty but were not terminated. However, the transcript before us includes testimony at length about this prior incident. In fact, the issue was addressed in the circuit court’s opinion. The court distinguished the prior incident because the other employees who appeared to be asleep were located in a secure tower and not like Cox in an open yard with prisoners. Cox has not shown that the missing testimony would be anything more than a repetition of the testimony that is included in the transcript. Because Cox has not shown that she has suffered specific prejudice due to the missing testimony, this issue has no merit.

2. Whether there was substantial evidence to uphold the EAB’s decision to affirm Cox’s termination.

¶ 14. Cox next argues that the EAB’s decision to terminate her employment was not supported by substantial *905 evidence. Specifically, Cox argues that the evidence proved that the decision of the EAB was arbitrary and capricious. Cox contends that the following reasons indicate that she should not have been terminated: Deputy Warden Rogers was newly appointed to his position; Rogers never said that Cox was asleep but said that she was only unresponsive; MDOC did not investigate the matter further before her termination; and other MDOC employees who appeared to be asleep while on duty were never brought before the hearing officer or terminated.
¶ 15. It was the hearing officer who heard the conflicting testimony and observed the demeanor of each witness. The EAB, through its adoption of the hearing officer’s decision, was the fact-finder in this case. “It is not for this Court to substitute its opinion for the opinion of the Board where the Board has reached its decision on conflicting evidence and where its conclusions are supported by substantial evidence.” Ohio Oil Co. v. Porter, 225 Miss. 55, 60, 82 So.2d 636, 638 (1955).
¶ 16. Despite the conflicting testimony presented by Cox, we find that there was substantial evidence to support the EAB’s decision to terminate her. Substantial evidence is such evidence that “reasonable minds might accept as adequate to support a conclusion.” Delta CMI v. Speck, 586 So.2d 768, 773 (Miss.1991). Deputy Warden Rogers testified that Cox was sitting down and that her eyes appeared to by closed while she was supposed to be observing the prisoners in the yard. Testimony was presented that the prisoners in the yard were classified as dangerous. There was further evidence that the prisoners were aware that Cox was not paying attention and that such a situation presented a danger to herself and to the prisoners. This evidence supports the hearing officer s finding that her inattentiveness to her duties placed herself as well as others in danger. She was alone in a yard with inmates who are classified as dangerous, being housed in a maximum security unit, and her failure to be alert could have resulted in injury to herself and others.”
¶ 17. Cox further argues that the decision was arbitrary and capricious because other guards who appeared to be asleep on duty were not terminated. However, evidence was presented to distinguish Cox’s termination from the prior incidents. The other employees were in a secure tower and were observed to be asleep by the MDOC’s surveillance cameras. Testimony was offered to show that the cameras were much less reliable than being observed in person as was the case when Deputy Warden Rogers observed Cox. We find substantial evidence to distinguish the MDOC’s decision to terminate Cox; thus, the fact that she was not treated in the same manner as the other employees does not make the EAB’s decision arbitrary and capricious. Accordingly, this issue has no merit.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF SUNFLOWER COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.