UNITED STATES of America, Plaintiff-Appellee,

v.

James Ray RENTON, Defendant-Appellant.

No. 77–5779.

United States Court of Appeals, Fifth Circuit.

Feb. 24, 1983.

Jack Hill, San Francisco, Cal., Stephen M. Orr, Austin, Tex., for defendant-appellant.

Sidney Powell, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before WILLIAMS and JOLLY, Circuit Judges, and WILL *, District Judge.

E. GRADY JOLLY, Circuit Judge:

This appeal comes before this court following a November 11, 1974, conviction of the defendant by a jury for counterfeiting in violation of 18 U.S.C. §§ 371 and 478. Finding no reversible error, we affirm.

In 1971 B.C. Lancaster contacted Elmer Cox about a scheme to counterfeit $100,000 Bank of Canada bearer bonds. Cox agreed to the counterfeiting scheme and converted

---

* District Judge for the Northern District of Illinois, sitting by designation.

some buildings on his property in Austin, Texas, into a workroom. A printing press and special equipment were moved into the building. Cox lined up two printers from Houston, Texas—appellant Rick Renton and Scottie Ray Muckelrath. Both Renton and Muckelrath were employees at the *Houston Chronicle* newspaper. Renton's primary job was to etch the layout of the counterfeit bearer bonds onto the metal plates.

By mid-summer of 1971, the preliminary work, most of which was apparently done on the weekends, had been completed for the printing process.

From the summer of 1971 through that Thanksgiving, over one thousand of the counterfeit bonds were printed. Upon examination, all but thirty of the bonds were destroyed, with Lancaster keeping the ones deemed usable. Renton, Muckelrath and Cox had been promised $50,000 each as soon as the bonds were circulated. Although at least some of the bonds were circulated, none of the conspirators was paid off by Lancaster.

On February 12, 1974, when Cox was with him, Lancaster was shot and killed. Cox suffered a heart attack that same night and was hospitalized. From his hospital bed Cox confessed to Secret Service agents about the counterfeiting scheme. Based on the information obtained from Cox, a search warrant was obtained and during the resulting search of Lancaster's house, the paraphernalia for the counterfeiting was found. Renton's fingerprints were discovered on the premises.[1]

Renton, Muckelrath and Cox were jointly indicted for conspiring to make, forge and counterfeit the bearer bonds. They were also charged with the crime of counterfeiting. Cox additionally was indicted for the murder of Lancaster. Renton and Muckel-

rath were tried and convicted by a jury on both counts.

Prior to sentencing, Renton fled and failed to appear for sentencing. The court issued a warrant for his arrest, and in May 1977, Renton was arrested in Denver, Colorado. After trial in Arkansas state court for an unrelated crime,[2] Renton was returned to federal custody in San Antonio, Texas, in October 1977 for sentencing. He was sentenced to consecutive terms of five years and three years for a total imprisonment term of eight years. He timely appealed this conviction.

## I.

## ISSUES

A. Do the omissions from the record resulting from the death of the court reporter require remand for a new trial?

B. Did the trial court err in limiting cross-examination of Elmer Cox or Mrs. Cox?

C. Did the court err in permitting Cox's guilty plea to be put before the jury?

D. Did the court err in denying Renton's Motion to Suppress regarding evidence seized from Lancaster's home?

## II.

### A. Omissions from the Record

■ As stated in the recitation of facts, Renton was "on the lam" for the period between November 1974 and May 1977. The following October he was sentenced upon the conviction herein and filed his Notice of Appeal eight days later on October 13, 1977.

Unfortunately, the court reporter who had transcribed the proceedings at Renton's trial died shortly after Renton's appeal was

---

1. Counterfeit bonds were recovered from Lancaster's safety deposit box at his bank. Cox also directed the agents to the location where the counterfeiting press had been dumped in a gravel pit west of Austin.

2. Although the details were not provided to this court, Renton apparently murdered an Arkan-

sas policeman during the period when he was a fugitive, shooting the policeman in the back of the head four times. He was convicted by an Arkansas trial court and had this conviction affirmed by the Arkansas Supreme Court. Renton is currently serving a life sentence without parole in an Arkansas state prison.

filed, before the proceedings had been transcribed from his shorthand and from the tape recordings of the trial. A substitute court reporter was appointed to transcribe the proceedings. Because of the idiosyncracies of the deceased court reporter's shorthand, however, the substitute reporter was unable completely to reconstruct a transcript. Beginning in November 1977, this court granted six stays for the filing of the transcript. On February 2, 1981, we remanded this case to the district court to determine when, if ever, a transcript would be prepared. In the spring of 1982, the transcript was completed, with gaps due to lost or indecipherable notes and tapes. At that point, this court remanded the case to the district court to permit the parties to review the trial transcripts and to serve objections or proposed amendments upon each other and to submit those objections to the district court for approval. No such objections were received from either Renton or from the government.

There are substantial portions of the record missing. Specifically omitted are portions of the argument to the judge concerning admission of co-conspirators' statements, the ability of a witness to testify after having heard portions of the trial, a defense motion, testimony on the final day of evidence, jury arguments and jury instructions.

The principal case in this circuit concerning the effect of omissions in the appeal record is *United States v. Selva,* 559 F.2d 1303 (5th Cir.1977). In *Selva,* the court reviewed the pertinent sections in the Court Reporter Act, 28 U.S.C. § 753. The Act requires that the court reporter "record verbatim by shorthand or by mechanical means ... (1) all proceedings in criminal cases had in open court ...." 28 U.S.C. § 753(b). As was stated in *Selva,* "This language is clear, and its requirements are mandatory." 559 F.2d at 1305. Reviewing the pertinent case law, including the Supreme Court decision in *Hardy v. United States,* 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964), we held that two dominant rules have evolved in cases involving record omissions:

The first holds that failure to comply with the Act is not error per se and will not work a reversal absent a specific showing of prejudice—*i.e.,* appellant must show that failure to record and preserve the specific portion of the trial proceedings visits a hardship upon him and prejudices his appeal.... An examination of the second body of case law reveals that a different rule obtains in cases involving new counsel on appeal. When, as here, a criminal defendant is represented on appeal by counsel other than the attorney at trial, the absence of a substantial and significant portion of the record, even absent a specific showing of prejudice or error, is sufficient to mandate reversal.... When a defendant is represented on appeal by the same attorney who defended him at trial, the court may properly require counsel to articulate the prejudice that may have resulted from a failure to record a portion of the proceedings. Indeed, counsel's obligation to the court alone would seem to compel him to initiate such disclosure. The attorney, having been present at trial, should be expected to be aware of any errors or improprieties which may have occurred during the portion of the proceedings not recorded. But when a defendant is represented on appeal by counsel not involved at trial, counsel cannot reasonably be expected to show specific prejudice.

559 F.2d at 1305–6.

At the trial here, Renton was represented by retained counsel, Jack Hill. Renton's co-defendant, Muckelrath, was represented by retained counsel, Stephen Orr. Hill was appointed to represent Renton on appeal. In a telegram to this court, however, Hill asserted that Orr was assisting him, Hill, on appeal, and in fact Orr filed Renton's brief and argued the case before this court.

Mr. Hill, who apparently no longer wishes to practice criminal law, filed at a late date a Motion to Withdraw and Substitute Mr. Orr on this appeal. In a ruling on this motion on January 20, 1983, we denied this motion, stating that it would "constitute a distinct and, so far as the record shows, an

unwarranted advantage to the appellant." We specifically held that substitution of new counsel would allow the appellant to attack the transcript on the lesser standard set forth in *Selva*. Finding that this would provide the appellant undue advantage, we held that Mr. Hill could not abandon his responsibilities as attorney of record.[3]

We are presented therefore with the situation discussed in *Selva* where the appellant must show specific prejudice. The appellant argues that because of the delay between the trial before the district court and the appeal, he should not be required to show specific prejudice. Rather, Renton argues essentially that the lapse of time necessarily brought about a lapse of memory, that errors which might have been committed during the trial which were not preserved in the record cannot be remembered, and that remand for a new trial is therefore necessary.

▪ Even aside from the point that the omissions in the record occurred only because Renton fled, with the court reporter dying only shortly after his recapture, we do not believe that the lapse in the time between the lower court trial and the appeal necessarily requires remand. As we stated in *Selva*, counsel is "expected to be aware of any errors or improprieties which may have occurred during the portion of the proceedings not recorded." 559 F.2d at 1306. Counsel in this case did not file any objection to the proceedings when given the opportunity under Fed.R.App.P. 10(c) to review the reconstructed transcript. Counsel's case file apparently contained no notations regarding errors committed during closing argument or during the court's instructions to the jury.

In *United States v. Bankston,* 603 F.2d 528 (5th Cir.1979), the appellant urged that the omission in the record of defense counsel's objections to the court's jury instructions and the court's rulings on those objections *per se* prejudiced him. Citing *Selva*,

we held that the appellant, who was represented by the same attorney who had represented him at trial, had failed to make the specific showing necessary. The mere allegation of prejudice and "intense hardship" were held insufficient to satisfy the *Selva* requirements. 603 F.2d at 534–35.

In *Harris v. Estelle,* 583 F.2d 775 (5th Cir.1978), a habeas petitioner sought relief more than twenty years after his Texas state court murder conviction. The state failed to provide a verbatim transcript of the trial. In the habeas proceeding before the state trial court, it was held that, due to the incomplete transcript a "meaningful" out-of-time appeal was impossible. The Criminal Court of Appeals of Texas reversed, and this court upheld that reversal. We stated:

> Petitioner was provided a statement of facts in narrative form in accordance with state law. The record provided petitioner was the same type of record given to all defendants in criminal cases . . . . At a subsequent evidentiary hearing petitioner was given an opportunity to adduce evidence to supplement the record. Witnesses from the trial testified at the hearing to facts surrounding petitioner's claims of error. For these reasons we conclude that a suitable alternative to a verbatim record was provided, and petitioner was not denied an effective appeal.

583 F.2d at 777.

*Harris* supports the conclusion that a less-than-complete transcript, coupled with a lengthy delay in the review process, does not, *ipso facto,* render that review a nullity where an opportunity is given the appellant to fill in the gaps in the record.

We are unpersuaded that the delay in appeal obviates a showing of specific prejudice. While we are not prepared to subscribe to the opinion in *Herndon v. City of Massillon,* 638 F.2d 963, 965 (6th Cir.1981), which held that failure to attempt to cure a faulty trial transcript pursuant to Rule

---

**3.** At oral argument Mr. Orr abandoned the argument that because Renton was represented by different counsel at trial and appeal the *Selva*-required showing of specific prejudice

was not applicable. Rather, as discussed *infra,* Mr. Orr argues that the lapse between trial and appeal obviates such a showing.

10(c) forfeits objection to those faults on appeal,[4] we do believe that the absence of objections is significant. That significance is compounded by counsel's inability to indicate one specific error committed during the portions of trial not included in the record. Having before us only "vague allegations of prejudice," *Bankston,* 603 F.2d at 535, we decline to remand this case on this ground.

## B. Limited Cross-Examination

Appellant has argued that the court improperly limited the cross-examination of both Mr. Elmer Cox and his wife during the trial.

■ Limitations on the extent of cross-examination are subject to the broad discretion of the trial court and may be reversed only upon a showing of clear abuse of that discretion. *United States v. Ruppel,* 666 F.2d 261, 269 (5th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 3487, 73 L.Ed.2d 1369 (1982).

■ The trial court here limited the cross-examination of Mr. Cox only concerning his possible role in Lancaster's murder. Cox's cross-examination covers one hundred pages of the transcript. His relationship with Lancaster was explored in detail. Cox was cross-examined about inconsistencies in his own statements concerning Lancaster and Lancaster's illicit dealings. Cox was even questioned by the appellant's counsel about Cox's plea agreement and about his having invoked his fifth amendment rights. Cox, who was under indictment in Texas for Lancaster's murder, asserted his fifth amendment rights when asked if anyone other than himself was present on the night when Lancaster was killed.

As we held in *United States v. Fricke,* 684 F.2d 1126, 1130 (5th Cir.1982), a defendant's sixth amendment rights do not override the fifth amendment rights of others. It is difficult to believe that Cox's testimony could have been impeached any more effectively than it already had been. In any event, however, we cannot find that the court erred in limiting cross-examination of Elmer Cox as to Lancaster's murder.

Similarly, the appellant objects to the granting of the ruling *in limine* prior to trial restricting the examination of Mrs. Cox about her husband's role in the death of B.C. Lancaster. Again, we note that limitations on cross-examination fall within the trial court's discretion. Mrs. Cox was extensively cross-examined about her knowledge of her husband's relationship with Lancaster. At one point on re-cross-examination, Mr. Hill asked about the murder. The court upheld objection on the grounds of the ruling *in limine* and refused to allow the question. Her husband's credibility as a witness had already been vigorously questioned during his testimony. Here again we cannot find an abuse of the court's discretion.

## C. Coconspirator's Guilty Plea

■ Elmer Cox testified upon examination by the government that he had been charged in the counterfeiting scheme with which appellant Renton had been charged and that he, Cox, had pled guilty to counterfeiting. Renton argues that the court should have issued, *sua sponte,* an instruc-

---

4. Our decision in *Stout v. Jefferson County Bd. of Ed.,* 489 F.2d 97 (5th Cir.1974), is cited by the court in *Herndon* as support for its waiver ruling. We do not believe that *Stout* supports this conclusion, however. In *Stout,* the school board appealed from an order granted the plaintiffs after a hearing in chambers, with no court reporter and no transcript. The school board made no effort to reconstruct the proceedings under Rule 10(c) to demonstrate an abuse of discretion by the district court. We stated simply that "Appellant, by failing to comply with Rule 10 F.R.A.P., has not shown, and indeed cannot show, any abuse of discretion ..." 489 F.2d at 98. Our reading of this pertinent language indicates merely that demonstration of abuse of discretion was impossible in the absence of a reconstructed transcript. The *Stout* court did not consider whether objection to the record itself had been waived.

Similarly, in *Hemming v. United States,* 409 F.2d 11, 12 (5th Cir.1969), the pro se habeas petitioner failed to include in the record any of the § 2255 hearing testimony. The court pointed out his failure to comply with Fed.R.App.P. 10(a), and held that the petitioner "cannot be heard, upon this appeal, to complain that the findings are erroneous." Again, as in *Stout,* it was the hearing, not the record, to which objection was made and found wanting.

tion cautioning the jury that Cox's guilty plea was not a substitute for evidence as to Renton's guilt.[5] Renton argues that his own guilt is not legally inferable from Cox's guilt and that in order to avoid such inference, the cautionary instruction was necessary.

■ We note that while cautionary instructions are favored in circumstances such as this, the lack of a cautionary instruction is not per se reversible error. *United States v. King*, 505 F.2d 602, 607 (5th Cir. 1974). While one person's guilty plea may not be used as substantive evidence of guilt of another, *U.S. v. Baete*, 414 F.2d 782, 783 (5th Cir.1969), objection should be made at the time such guilty plea is made evident to the jury. No such objection was made here. In the absence of such timely objection, we have held that reversal is not proper unless the "error is so patent as to have seriously jeopardized the substantial rights of the accused." *King*, 505 F.2d at 605. In *United States v. Fleetwood*, 528 F.2d 528 (5th Cir.1976), this court set forth seven factors which should be considered in determining whether a defendant's "substantial rights" have been violated by the admission of a coconspirator's guilty plea. Among these factors are the presence or absence of a limiting instruction, whether there was a proper purpose in introducing the guilty plea, whether objection was entered, and whether, in light of all the evidence, the error, if any, was harmless beyond a reasonable doubt. 528 F.2d at 532.

The government has urged that the introduction of Cox's guilty plea was a necessary trial strategy to head off the impeachment of Cox's credibility by the defense. This anticipates quite a bit, however, since, while it is possible Renton might have attacked the possibility of a plea-bargain arrangement between Cox and the government, at the same time such an attack would have required the divulgence of the very plea of which Renton here complains. A reading of the record does not, however, indicate that the government unduly emphasized Cox's guilty plea or used it as substantive evidence of Renton's guilt. Most of the testimony provided by Cox during his appearance as a witness concerned the roles played in the counterfeiting operation by Cox, Muckelrath, Lancaster and Renton.

Given the discretion afforded the trial court in admission of testimony such as this, and given the absence of an objection, we cannot find that the error was so patent as to require reversal. Additionally, given the vast and damning array of evidence against the appellant, we cannot say that the error, if any, actually harmed the appellant. Extensive evidence, both testimonial and forensic, sufficient unto itself to convict the defendant, was brought forth at trial.

### D. Motion to Suppress

■ Renton urges that the evidence obtained from the search of B.C. Lancaster's premises should not have been admitted at trial. Citing *Jones v. United States,* 362 U.S. 257, 267, 80 S.Ct. 725, 734, 4 L.Ed.2d 697 (1960), Renton argues that he was "legitimately on the premises where the search" occurred and therefore has standing to object to the use of evidence obtained from the premises.

■ Appellant's argument is not well taken here. As the Supreme Court held in *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978), the appellant had no "legitimate expectation of privacy in the invaded place" and therefore lacks standing to protest the seizure of evidence from Lancaster's home. "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." 439 U.S. at 134, 99 S.Ct. at 425. Further, the evidence was seized pursuant to a search warrant. Renton has presented no evidence that the search warrant was

---

**5.** A cautionary instruction may have been given to the jury at the close of the trial. Because the instructions were omitted from the reconstructed record, however, and because neither Renton's attorneys nor the government recalls whether such an instruction was given, we do not know. We must therefore assume that no such instruction was given.

improperly obtained. Moreover, Renton did not file the Motion to Suppress. This motion was filed by Muckelrath. Renton did not file a motion to adopt Muckelrath's motions until several months after the suppression hearing. At the suppression hearing, the lack of standing was argued by the government; however, Renton did not put on any evidence or testimony to establish standing, nor did Renton claim any possessory interest in the property.

Having found no reversible error committed at the trial below, the judgment entered against the appellant is therefore affirmed.

AFFIRMED.