KITCHENS, PRESIDING JUSTICE, DISSENTING:
 

 ¶ 171. I respectfully dissent. Neither Chapman nor the State has raised the circuit court's grant of an out-of-time appeal as an issue. I would not disturb the circuit court's finding that Chapman is entitled to an out-of-time appeal. The same analysis the majority employs to reverse the circuit court's grant of an out-of-time appeal was considered and rejected by this Court in
 
 Chapman v. State
 
 ,
 
 167 So.3d 1170
 
 (Miss. 2015) (
 
 Chapman IV
 
 ). We held that Chapman's claim that his trial counsel was ineffective for neglecting to file an appeal was not time barred because it implicated Chapman's fundamental right to a direct appeal of his conviction and sentence.
 

 ¶ 172. Because this issue already has been decided, it is the law of the case. Because the facts did not change materially after remand, we should follow
 
 Chapman IV
 
 . Today's decision must leave everyone involved in this case wondering why, if we were going to reach the result embraced by the majority today, we did not do so in
 
 Chapman IV
 
 , when the same issues were before us, rather than causing the parties and circuit court to expend the time, effort, and resources they have devoted to uncovering the aged record of Chapman's trial. With respect, I reject the majority's conclusion that the trial court erred by granting Chapman's request for an out-of-time appeal. But because the reconstructed record is inadequate to allow a meaningful appeal, pursuant to our mandate in
 
 Chapman IV
 
 , I would reverse and remand for a new trial.
 

 I. This Court should not disturb the circuit court's finding that Chapman is entitled to an out-of-time appeal.
 

 A.
 
 Chapman IV
 

 ¶ 173. I need not repeat the complicated procedural history of Chapman's quest to
 obtain judicial review of his convictions of rape and robbery because it has been recounted adequately by the majority opinion. But I do discuss our decision in
 
 Chapman IV
 
 because resolution of the issue of Chapman's entitlement to an out-of-time appeal depends in large part upon it. In
 
 Chapman IV
 
 , this Court reviewed on
 
 certiorari
 
 an appeal from the denial of Chapman's motion for post-conviction relief from his 1982 conviction of rape and sentence of life imprisonment.
 
 Chapman IV
 
 , 167 So.3d at 1170. Chapman made two distinct claims which, the Court found, implicated potential constitutional rights violations: (1) he claimed his trial record and transcript had been destroyed improperly; and (2) he claimed that he had received ineffective assistance of counsel due to trial counsel's failure to file a direct appeal after he was paid to undertake that endeavor.
 
 Id.
 
 at 1172. Chapman also raised other issues attacking the proceedings at trial.
 
 Id.
 
 at 1172-73.
 

 ¶ 174. This Court determined that, without the trial record and transcript, "it [wa]s impossible to address the merits of Chapman's claims and his assertion of ineffective assistance of counsel."
 
 Id.
 
 at 1173. We found that the absence of a record, in light of the statutory duty to preserve the record of Chapman's trial, may have violated his due process rights, effectively denying his right to appeal.
 
 Id.
 
 Further, we recognized that a defendant's constitutional right to the effective assistance of counsel is violated by defense counsel's failure to ensure there is at least a partial transcript of the trial proceedings that is sufficient to enable an adequate appeal.
 
 Id.
 
 (citing
 
 Brawner v. State
 
 ,
 
 947 So.2d 254
 
 , 262 (Miss. 2006) ).
 

 ¶ 175. Chapman also alleged that his trial counsel was ineffective for "not filing his direct appeal, and thereby failing to secure a transcript of his trial."
 
 Chapman
 
 , 167 So.3d at 1172. He averred that he had paid his trial counsel, to file an appeal and that trial counsel had agreed to do so.
 
 Id.
 
 Despite his trial attorney's assurances, no appeal ever was filed.
 
 Id.
 
 Chapman asserted that he first had discovered no appeal had been filed when he was so informed by the court clerk two years after his conviction.
 
 Id.
 
 In addressing these allegations, we emphasized that a "defendant has an 'absolute right' to appeal."
 
 Id.
 
 at 1173 (citing
 
 Harden v. State
 
 ,
 
 460 So.2d 1194
 
 , 1200 (Miss. 1984) ;
 
 Douglas v. California
 
 ,
 
 372 U.S. 353
 
 , 358,
 
 83 S.Ct. 814
 
 ,
 
 9 L.Ed. 2d 811
 
 (1963) (declaring that all defendants are entitled to a meaningful appeal) ). We found that the "lack of a record, which Chapman attributes to the trial court and to his attorney's alleged failure to file his appeal, effectively denied Chapman his right to an appeal and to a review of the merits of his claim on PCR."
 
 Chapman
 
 , 167 So.3d at 1173. Moreover, we held that, because Chapman raised credible allegations implicating violations of his fundamental constitutional rights, his claims were excepted from the procedural bars of the Uniform Post-Conviction Collateral Relief Act (UPCCRA), including the statute of limitations.
 
 Id.
 
 at 1174-75.
 

 ¶ 176. This Court concluded that the "extraordinary circumstances," including the lack of a direct appeal, the lack of a court record, defense counsel's failure to obtain a transcript, and lack of appellate review of Chapman's claims on the merits entitled him to an evidentiary hearing.
 
 Id.
 
 at 1174. We ordered the trial court to determine at the hearing "what, if anything, of the trial record exists, and to provide Chapman and the State an opportunity to locate or reconstruct the trial record and transcript, or to produce an equivalent picture."
 
 Id.
 
 We went on to explain that a "sufficient equivalent of the record" would be "enough material information specific to the claims raised for the
 trial court judge to fairly consider the merits of each issue."
 
 Id.
 

 ¶ 177. Of critical importance to the instant appeal, the Court set forth exactly what was to occur on remand. Specifically, we ordered that "[i]f Chapman or the State can produce the record and transcript or a sufficient equivalent, the circuit court should then consider the merits of Chapman's claims raised in the current motion for PCR based on that record."
 
 Id.
 
 But if "Chapman or the State fails to produce the record and transcript or an adequate equivalent, Chapman may be entitled to a new trial."
 
 Id.
 
 So we instructed the trial court first to determine whether a trial record and transcript exist and, if not, then to determine whether a sufficient equivalent could be constructed.
 
 Id.
 
 at 1175. If neither the record and transcript nor an adequate equivalent could be obtained, then the trial court was to give Chapman an opportunity to file a motion for a new trial.
 
 Id.
 

 B. Proceedings on Remand
 

 ¶ 178. On remand, the circuit court followed our explicit instructions to the letter. Several memoranda, motions, and orders in the record make plain the significant difficulty experienced by the State, the Hinds County Public Defender's Office, and the circuit court in implementing this Court's order to locate the missing record of a trial that had occurred more than thirty-four years earlier. As summarized by the circuit court:
 

 Shortly after the remand, the Court and the parties began the long and tedious task of researching and investigating to determine whether or not the trial record and transcript existed. In light of the fact that this matter proceeded to trial in January 1982, over 34 years ago, determining the existence of the trial record and transcript was exceptionally challenging as all of the individuals involved with the case no longer work for Hinds County. Additionally, reviewing the court reporter records was painstakingly difficult, as the records are maintained in a highly unorganized fashion in a room within the Hinds County Courthouse. The reviewing of these records was further complicated by the fact that neither the Court nor the parties were aware of the true identity of the court reporter in the above-styled cause of action until May, 2016.
 

 After nearly one (1) year of investigation into the matter by both the Court and the parties, Assistant District Attorney Jamie McBride located the original reel to reel tapes which contain the audio recordings of the Defendant's 1982 trial. Due to the dated nature of the tapes, the Court was forced to have the audio files transferred to a digital format and the sound quality enhanced. The audio recordings were subsequently transcribed by a freelance court reporter as the original court reporter, Nelda Woods, was unavailable to complete this project.
 

 ¶ 179. Now that a transcript had been discovered, transferred to a digital format, and transcribed, the circuit court was able to rule. Concluding that a sufficient record had been found, the circuit court further implemented this Court's instructions by ruling on the merits of the claims raised in Chapman's PCR, beginning with his claim that he was entitled to an out-of-time appeal because his counsel had promised to file an appeal, but had failed to do so. The circuit court applied the rule that "[t]o prove his right to an out-of-time appeal, the movant must show by a preponderance of the evidence that he asked his attorney to appeal within the time allowed for giving notice of an appeal. Moreover, the movant must show that the attorney failed to perfect the appeal and that such failure
 was through no fault of the movant."
 
 Sellers v. State
 
 ,
 
 52 So.3d 426
 
 , 428 (Miss. Ct. App. 2011). The circuit court recognized that, if the record does not show that defense counsel responded to the client's request to appeal, an evidentiary hearing is required.
 
 See
 
 id.
 

 Chapman claimed in his PCR that, after his sentencing, his defense counsel, Hermel Johnson, had stated on the record that he intended to file an appeal. But, the circuit court noted, the trial transcript omitted the sentencing proceedings, and the only reference to an appeal in the record was an unsigned letter to Chapman that purported to be from Honorable William F. Coleman, Circuit Judge, saying "the Court Administrator checked with Mr. Johnson, your attorney, and he advised that it was part of the plea bargaining agreement on the robbery charge that you would not appeal the rape charge. I have no way of knowing if this is correct or not." The circuit court found that this unsigned letter did not constitute adequate evidence to contradict Chapman's claim that Attorney Johnson had, in fact, promised to file an appeal. Because Attorney Johnson was deceased, the circuit court found that an evidentiary hearing would be "useless." The circuit court granted Chapman's request for an out-of-time appeal, dismissed the remaining PCR claims as moot, and permitted Chapman to raise them in his appeal.
 

 C. This Appeal
 

 ¶ 180. The State did not appeal from the circuit court's decision. Instead, Chapman appealed, arguing that the trial court had erred by finding that the record was sufficient to enable a meaningful appeal. He argues that, because only a partial trial transcript was found, several of his issues still cannot be reviewed due to missing portions of the record.
 
 [17]
 
 He contends that his appellate counsel "cannot prepare his appeal with this skeletal and incomplete record." Chapman argues that his trial attorney's failure to file an appeal, resulting in the loss of the entire record and transcript of the trial, constituted ineffective assistance of counsel, for which the appropriate remedy is a new trial. The State asserts that the record, though fragmented, is adequate for meaningful appellate review, and that because Chapman cannot demonstrate prejudice from the fact that the record is incomplete, his claim of ineffective assistance of counsel fails. The State does not argue that the trial court erred by granting an out-of-time appeal.
 

 ¶ 181. Without being asked to do so, the majority holds that the trial court erred in granting an out-of-time appeal, resting this conclusion upon the unsigned 1983 letter, ostensibly from Judge Coleman to Chapman, contained in the reconstructed record. That letter purported to inform Chapman that no appeal had been filed and that if he wanted to appeal, he had to "file the proper papers with the Mississippi Supreme Court." The majority concludes that this letter placed Chapman on notice that his appeal had not been filed and informed him of the proper remedy, which at that time would have been to file a petition with this Court.
 
 Jones v. State
 
 ,
 
 346 So.2d 376
 
 , 377 (Miss. 1977). The majority finds that, under the then-newly enacted UPCCRA's statute of limitations, Chapman had until April 1987 to seek an out-of-time appeal. Curiously, the majority finds that "the scant record before the Court" was at fault for our not applying the statute of limitations in
 
 Chapman IV
 
 but doing so now. The majority also finds that the Court's
 concern in
 
 Chapman IV
 
 that the trial transcript had been destroyed has been obviated by the transcript's discovery.
 

 ¶ 182. In adjudicating Chapman's appeal, the majority careens in a direction surely unexpected by the parties and the circuit court by holding that Chapman is not entitled to an out-of-time appeal. First, the issue was not raised by Chapman, nor does the State complain about it. Second, to the extent that this Court must consider the propriety of an out-of-time appeal because we always are mindful of our appellate jurisdiction, we previously adjudicated in
 
 Chapman IV
 
 , on essentially the same facts before us now, that Chapman's PCR claiming that he was unconstitutionally denied an out-of-time appeal was excepted from the UPCCRA's statute of limitations. That holding is the law of the case and must govern all further proceedings in this case.
 

 ¶ 183. We have held that:
 

 The doctrine of the law of the case is similar to that of former adjudication, relates entirely to questions of law, and is confined in its operation to subsequent proceedings in the case. Whatever is once established as the controlling legal rule of decision, between the same parties in the same case, continues to be the law of the case, so long as there is a similarity of facts. This principle expresses the practice of courts generally to refuse to reopen what has previously been decided. It is founded on public policy and the interests of orderly and consistent judicial procedure.
 

 Lee v. Thompson
 
 ,
 
 167 So.3d 170
 
 , 176 (Miss. 2014) (quoting
 
 Simpson v. State Farm Fire & Cas. Co.
 
 ,
 
 564 So.2d 1374
 
 , 1376 (Miss.1990),
 
 overruled on other grounds by
 

 Upchurch Plumbing, Inc. v. Greenwood Utils. Comm'n
 
 ,
 
 964 So.2d 1100
 
 (Miss. 2007) ). Thus, if a second appeal involves the same facts and issues as a prior appeal, the holding of the prior appeal ordinarily will control. However, if "the facts are different, so that the principles of law announced on the first appeal are not applicable, as where there are material changes in the evidence, pleadings or findings," the prior decision will not be conclusive in a second appeal.
 
 Lee
 
 , 167 So.3d at 177. Another exception to the law of the case doctrine exists if, after mature consideration, the prior decision was manifestly erroneous or would result in a grave injustice.
 
 Id.
 
 (citing
 
 J.K. v. R.K.
 
 ,
 
 30 So.3d 290
 
 , 296 (Miss. 2009) ).
 

 ¶ 184. Critically, in
 
 Chapman IV
 
 , the same essential facts were before this Court concerning Chapman's discovery that no appeal from his 1982 conviction and sentence ever was filed. In
 
 Chapman IV
 
 , we acknowledged that Chapman claimed he had learned no appeal had been filed "roughly two years" after his conviction.
 
 Chapman
 
 , 167 So.3d at 1172. We were required to consider that allegation as true for the purpose of evaluating whether Chapman had stated a claim sufficient to survive dismissal or denial of the PCR on procedural grounds or for failure to state a claim.
 
 See
 

 Miss. Code Ann. § 99-39-11
 
 (2) (Rev. 2015). So the fact that Chapman had discovered that no appeal had been filed long before filing this PCR was squarely before the Court in
 
 Chapman IV
 
 . And certainly, the UPCCRA's provision for requesting an out-of-time appeal was known to this Court at that time. Thus, with knowledge of the approximate time that Chapman discovered no appeal had been filed and knowledge of the legislation that purported to impose a time limit upon his seeking an out-of-time appeal, we held that Chapman had stated a claim sufficient to surmount the statute of limitations. Applying the law of the case doctrine to our decision in
 
 Chapman IV
 
 , Chapman's request for an out-of-time appeal is not subject
 to the UPCCRA's statute of limitations.
 
 [18]
 

 ¶ 185. While ignoring the law of the case doctrine, the majority suggests that the facts have changed drastically due to the discovery of the purported letter from Judge Coleman in the reconstructed record. But the late Judge Coleman's unsigned letter falls far short of being the smoking gun that the majority suggests. The circuit court declined to rely on the letter's contents, finding that an unsigned copy of a letter found in a court file was inadequate evidence to contradict Chapman's claims. Thus, the circuit court rejected the notion that the letter rises to the level of competent evidence that Chapman had notice of its contents. This Court reviews a trial court's evidentiary rulings for abuse of discretion.
 
 Williams v. State
 
 ,
 
 54 So.3d 212
 
 , 213 (Miss. 2011). While the majority explicitly relies on the letter and, indeed, rests its holding upon it, the majority does not find that the circuit court abused its discretion by holding that the letter was inadequate evidence of notice. To the contrary, the facts clearly support the circuit court's finding that the letter should not and cannot be relied upon as conclusive notice to Chapman. The letter is unsigned. There is no proof it ever was seen by Judge Coleman or received by Chapman, as the majority is willing to assume. Just as easily, one could assume that the letter was prepared by the judge or a member of his staff and placed in the court file, but never signed or sent. The realm of possibilities is vast. These deficiencies firmly support the circuit court's finding that the letter was inadequate to impute notice of its contents to Chapman. And, as discussed in the preceding paragraph, even if Chapman had received the letter, its receipt by him would not approach material alteration of the facts that were before the Court in
 
 Chapman IV
 
 .
 

 ¶ 186. Further, the majority places great stock in its conclusion that the reconstructed record establishes as truth Justice Josiah D. Coleman's suppositions in his dissent in
 
 Chapman IV
 
 . But, in reality, it changes nothing. Justice Coleman's position in
 
 Chapman IV
 
 , that, most likely, the trial proceedings had not been transcribed because no appeal had been filed, was fully recognized as a possibility by the Court in
 
 Chapman IV
 
 . But the Court did not hold that an out-of-time appeal would be foreclosed if it should be discovered that there was no trial transcript because defense counsel had not appealed. Rather, we found that "[t]his lack of a record, which Chapman attributes to the trial court and
 
 to his attorney's alleged failure to file his
 

 appeal
 
 , effectively denied Chapman his right to an appeal ...."
 
 Chapman IV
 
 , 167 So.3d at 1173 (emphasis added). We held that, if the record and transcript or an adequate equivalent were discovered on remand, the trial court should rule on the merits of Chapman's post-conviction claims. We did not hold that, if the record and transcript or adequate equivalent were discovered on remand, Chapman would be disqualified from an out-of-time appeal, as the majority now holds on the strength of an unsigned, perhaps unsent, letter that contains its own disclaimer.
 

 ¶ 187. Because the same material facts were before the Court in
 
 Chapman IV
 
 as are before us today, the majority's decision results in a shameful waste of judicial resources. This Court ordered a foreseeably laborious undertaking in
 
 Chapman IV
 
 . That undertaking, now complete but only partially successful, has been mooted by this Court's rejection of its own reasoning in
 
 Chapman IV
 
 . If the majority's current reasoning had been applied to the facts in
 
 Chapman IV
 
 , we would not have ordered the parties and circuit court to expend time, money, and effort on remand in an exhaustive search for the record. Rather, because the Court in
 
 Chapman IV
 
 was well aware that Chapman had learned two years after his conviction that no appeal had been filed and that his request for an out-of-time appeal was statutorily time barred, under the majority's current reasoning, we should have affirmed the denial of post-conviction relief at that time, as Justice Coleman advocated in his dissent.
 

 ¶ 188. Because the material facts have not changed since our remand in
 
 Chapman IV
 
 , Chapman's claim that his fundamental constitutional right to an appeal was violated is as viable today as it was in
 
 Chapman IV
 
 . I would affirm the circuit court's finding that Chapman is entitled to an out-of-time appeal. Chapman says, without contradiction, that he paid his defense counsel, Hermel Johnson, to file an appeal on his behalf. Clearly, Johnson did not do so. Chapman avers that, after the sentencing hearing, Johnson said on the record that he would appeal; however, the sentencing hearing is missing from the reconstructed record, and Johnson has died. The circuit court found that, because the record did not contain adequate evidence to contradict Chapman's claims and an evidentiary hearing would be useless, his request for an out-of-time appeal should be granted. On review of the grant or denial of post-conviction relief, this Court will affirm the trial court's fact findings unless they are clearly erroneous.
 
 Chase v. State
 
 ,
 
 171 So.3d 463
 
 , 479 (Miss. 2015).
 

 ¶ 189. A petitioner seeking an out-of-time appeal must prove four elements by a preponderance of the evidence: (1) within the time allowed for giving notice of appeal, (2) he asked his attorney to appeal, (3) the attorney failed to perfect the appeal, and (4) the failure to appeal was through no fault of the petitioner.
 
 Minnifield v. State
 
 ,
 
 585 So.2d 723
 
 , 724 (Miss. 1991). Chapman avers that, within the time for giving notice of appeal, he told his attorney he wished to appeal. And it is a certainty that Attorney Johnson never perfected an appeal. Nothing in the record shows that Chapman did anything to prevent Attorney Johnson from appealing. The purported letter from Judge Coleman states that "the Court Administrator checked with Mr. Johnson, your attorney, and he advised that it was part of the plea bargaining agreement on the robbery charge that you would not appeal the rape charge. I have no way of knowing if this is correct or not." This quotation consists of triple hearsay in an unsigned letter, and the circuit court did not abuse its discretion by finding that it was inadequate to contradict Chapman's claim that he had relied on Hermel Johnson to file his appeal.
 

 The circuit court recognized that, due to the missing record and the passing of Mr. Johnson, Chapman was unable to prove his assertions; but, nevertheless, nothing contradicted them and his request for an out-of-time appeal should be granted. This ruling by the circuit court was appropriate, given our directive in
 
 Chapman IV
 
 that a record or its equivalent be produced to give Chapman the opportunity to prove his claims or he must be given leave to seek a new trial.
 

 ¶ 190. Finally, I note that the conduct of Attorney Johnson in other cases lends credibility to Chapman's assertions. This lawyer had a history, previously recognized by this Court, of taking payments for legal work and never performing, and his misconduct has been the subject of numerous disciplinary proceedings before us. In 1983, the Court issued a private reprimand upon a finding that Attorney Johnson had neglected his duties to a client in a criminal case. In 1986, this Court found that in 1982, the year of Chapman's trial, Attorney Johnson had represented the wife in a divorce proceeding, but negligently had failed to obtain entry of a divorce decree from the chancery court; the omission went undiscovered for two years. For that misconduct, this Court issued a public reprimand. Attorney Johnson was disbarred in 1987. In that instance, he had undertaken the representation of two criminal defendants at a time when he was suspended from the practice of law. Further, after Johnson had failed to appear for appointments, one of the clients requested a refund, and Johnson gave her a "refund" check drawn on a closed account. In the order of disbarment, the Court recited the entirety of Attorney Johnson's prior disciplinary history:
 

 (1) a Public Reprimand in February, 1977; (2) a ninety (90) day suspension in July, 1983; (3) a Private Reprimand in October, 1983; (4) a Public Reprimand in April, 1984; (5) a Public Reprimand in July, 1984; and (6) a Public Reprimand in May, 1986. The ninety (90) day suspension in July, 1983, the Public Reprimand in April, 1984, and the Public Reprimand in July, 1984, were based in part on findings by the Court that Respondent had engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.
 

 Miss. State Bar v. Johnson
 
 , Confidential Misc. No. 250 (Oct. 30, 1987). Johnson was disbarred again in 1990 for conduct that had occurred in 1985. This time, he had been retained by a criminal defendant who pled guilty and was given a suspended sentence and a $6,000 fine. He told the client to pay him the money for the fine in installments and that he would deliver the money to the clerk of court. But instead of delivering these funds to the clerk of court as promised, Attorney Johnson converted them to his own use.
 

 ¶ 191. Johnson's misconduct in the case of
 
 PercyDixon v. State
 
 ,
 
 519 So.2d 1226
 
 (Miss. 1988), was strikingly similar to that alleged by Chapman. Dixon was convicted of rape on March 31, 1977. After the verdict, Dixon requested that Johnson appeal, and he reaffirmed that request at the sentencing hearing on September 7, 1977. Attorney Johnson charged Dixon a $1,000 fee for filing the appeal. He filed a petition for bail on Dixon's behalf and filed a notice to the court reporter to transcribe the record, but took no further action to perfect the appeal. On July 30, 1982, Dixon discovered that no appeal had been filed. In July 1983, this Court suspended Johnson from the practice of law for ninety days for that misconduct.
 

 ¶ 192. In contrast to today's case, this Court granted Dixon's motion for an out-of-time appeal from his nine-year-old rape conviction.
 
 Dixon v. State
 
 , No. 56, 765
 (Miss. 1986). We recognized Attorney Johnson's misconduct and permitted the appeal to proceed, on the ground that: "[s]uffice it to say that since 1977 Dixon has struggled to perfect and present to this Court a direct appeal from his conviction and sentence. However, Dixon has been incarcerated and his failure to perfect an appeal has been substantially without fault of his own."
 

 Id.
 

 ¶ 193. I have explained why the circuit court's grant of an out-of-time appeal should be affirmed. But in addition I note that our precedent in
 
 Dixon
 
 lends further support to the conclusion that Chapman, represented by the same attorney as Dixon in the same type of case, with the same claim - that the attorney promised to appeal but did not - in all fairness is entitled to an out-of-time appeal. And this Court is fully capable of taking judicial notice of the eye-opening pattern of ethical misconduct by Hermel Johnson that is spread across the records of our Bar disciplinary proceedings and lends further credibility to Chapman's allegation of similar misconduct in his case.
 

 ¶ 194. As we reaffirmed in
 
 Chapman IV
 
 , a criminal defendant has an absolute right to appeal his conviction.
 
 Chapman IV
 
 , 167 So.3d at 1173. And our law does not leave a newly convicted criminal defendant to his or her own devices in filing an appeal. Rather, all criminal defendants are entitled to the effective assistance of counsel to file a direct appeal.
 
 Jones v. State
 
 ,
 
 355 So.2d 89
 
 , 91 (Miss. 1978). Chapman, through no fault of his own, was denied that right, but has yet to be afforded an appeal from his 1982 conviction. The constitutional difficulties presented by his situation were reviewed meticulously by this Court in
 
 Chapman IV
 
 , and the pertinent facts did not change materially on remand. I would not disturb the trial court's grant of an out-of-time appeal. Instead, I would review Chapman's argument that the reconstructed record is insufficient to afford meaningful appellate review.
 

 II. The reconstructed record is insufficient to enable a meaningful appeal.
 

 ¶ 195. The majority finds that, even if it were to allow Chapman an out-of-time appeal, the reconstructed record is adequate to enable meaningful appellate review of his claims. Then, the majority analyzes the issues raised in Chapman's PCR and finds that the reconstructed record shows those claims to be without merit. The majority misunderstands the nature of the relief ordered by the circuit court, which granted Chapman's PCR in part by granting permission for an out-of-time appeal. As with any direct appeal, that ruling allowed Chapman to file an appeal from his 1982 conviction raising direct appeal issues. The grant of a direct appeal did not limit Chapman to the issues raised on post-conviction relief, but permitted him to proceed with a direct appeal just as if there had been no delay between trial and appeal. The trial court dismissed the PCR issues as moot in light of the grant of Chapman's request for an out-of-time appeal. But Chapman's decision to appeal from the circuit court's ruling has yielded an appellate decision foreclosing an out-of-time appeal altogether.
 

 ¶ 196. The majority errs by evaluating Chapman's PCR issues to find that an out-of-time appeal would have no merit. We cannot, at this point, know exactly what issues Chapman would have raised in a direct appeal, although his brief, the motion for a new trial filed by Hermel Johnson, and Chapman's PCR issues do provide some insight into what he might have raised. In his brief, Chapman avers that the two main issues he would have raised are discriminatory jury selection and sentencing.
 

 ¶ 197. I agree with Chapman that the reconstructed record is insufficient to permit meaningful appellate review. In
 
 Watts v. State
 
 ,
 
 717 So.2d 314
 
 , 316 (Miss. 1998), the appellant argued that his right to meaningful appellate review had been violated by the lack of a full and complete trial transcript. Missing portions included
 
 voir dire
 
 , closing arguments, and part of the defendant's testimony.
 

 Id.
 

 The Court applied the test from
 
 United States v. Renton
 
 ,
 
 700 F.2d 154
 
 (5th Cir.1983).
 
 Watts
 
 ,
 
 717 So.2d at 318
 
 . Under that test, an appellant represented by the same lawyer on appeal as at trial must show specific prejudice from the lack of a full record of the trial proceedings.
 

 Id.
 

 (quoting
 
 Renton
 
 ,
 
 700 F.2d at
 
 157 ). But an appellant represented by new appellate counsel can secure reversal based on the absence of a "substantial and significant portion of the record."
 

 Id.
 

 (quoting
 
 Renton
 
 ,
 
 700 F.2d at
 
 157 ). Because Watts was represented by the same counsel on appeal as at trial, the Court found that he was required to show specific prejudice from the missing portions of the record.
 

 Id.
 

 And because Watts raised no errors related to the missing portions of the record, the Court held that he had suffered no prejudice and there was no reversible error.
 

 Id.
 

 ¶ 198. As in
 
 Watts
 
 , the record in this case is incomplete. But unlike in
 
 Watts
 
 , Chapman now is represented by new appellate counsel. Although the transcript of the
 
 voir dire
 
 in
 
 Watts
 
 was missing, this Court found no error because Watts did not raise any issues concerning
 
 voir dire
 
 . As in
 
 Watts
 
 , the transcript of
 
 voir dire
 
 is missing, but here Chapman avers that he plans to raise discriminatory jury selection as an issue on direct appeal, and he consistently has raised that issue throughout the post-conviction litigation. Chapman, an African-American man, claims discrimination in jury selection because he was tried for the crime of raping a white woman by an all-white female jury.
 

 ¶ 199. The majority finds it needs no record to review this claim because Chapman does not aver that his trial counsel raised a violation of the then-applicable law,
 
 Swain v. Alabama
 
 ,
 
 380 U.S. 202
 
 ,
 
 85 S.Ct. 824
 
 ,
 
 13 L.Ed. 2d 759
 
 (1965), and Chapman does not describe how the trial court violated statutory law for selecting jurors. With respect, in the absence of any record of the
 
 voir dire
 
 proceedings, there is no record from which Chapman's new appellate counsel could evaluate what defense counsel or the trial judge did during
 
 voir dire
 
 examination or how the jury was selected. And the jury's composition remains unknown. Despite the majority's speculation that some men were on the jury, it is equally likely that the trial court's reference to "ladies and gentlemen" referred to the jurors who tried the case or to those jurors plus the alternate jurors whom, I must presume from the incomplete record, were dismissed before deliberations began. Without the
 
 voir dire
 
 transcript, neither we nor Chapman's present-day counsel can know what occurred during
 
 voir dire
 
 , including what objections were made or how the trial court ruled on any issues that arose. Because no record or equivalent has been produced, meaningful appellate review of this issue is impossible. Based upon
 
 Chapman IV
 
 , this fact alone should entitle Chapman to a new trial.
 

 ¶ 200. Many of Chapman's other likely appellate issues also are not amenable to review in light of the incomplete record. In his motion for a new trial, Chapman raised a challenge to the weight of the evidence, a claim that requires a reviewing court to consider all of the evidence to determine whether the verdict was against the overwhelming weight of the evidence.
 

 Swanagan v. State
 
 ,
 
 229 So.3d 698
 
 , 705 (Miss. 2017). But, as Chapman points out, some of the testimony on the reel-to-reel tapes was inaudible and could not be transcribed. His new trial motion also complained of the denial of seven of his proffered jury instructions. Although the jury instruction conference was transcribed, it is riddled with omissions deemed "inaudible." And the jury instructions themselves do not appear in the reconstructed record. Chapman also argued that the trial court allowed the victim to testify that the perpetrator of the rape had robbed her despite the grant of a motion
 
 in limine
 
 prohibiting that very testimony. Neither the motion
 
 in limine
 
 nor the trial judge's ruling thereon is in the record. Also in the new trial motion, Chapman argued, and he has expressed an intent to argue on appeal, that his life sentence constituted cruel and unusual punishment. If Chapman's sentencing proceeding had been included in the record, we could discern whether his attorney raised this argument at sentencing, and, if so, how the trial court responded.
 

 III. Conclusion
 

 ¶ 201. Due to the defense lawyer's ineffectiveness in neglecting to file Chapman's appeal, Chapman, then a minor, was left without the assistance of counsel to navigate the legal system on his own. In
 
 Chapman IV
 
 , this Court recognized the impingement of his constitutional right to a meaningful appeal and ordered reconstruction of the record or its equivalent. That being done, the circuit court granted an out-of-time appeal. The impact of the majority's holding is that the considerable efforts on remand were for naught and Chapman's right to appeal is trampled. I would not disturb the circuit court's finding that Chapman was entitled to an out-of-time appeal. But because the reconstructed record is inadequate to enable meaningful appellate review, I would hold that, in the interests of justice, a new trial is required.
 

 KING, J., JOINS THIS OPINION.
 

 He also argues that the life sentence, imposed on a sixteen-year-old, constituted cruel and unusual punishment.
 

 I question whether the statute of limitations in the UPCCRA constitutionally can be applied to Chapman's request for an out-of-time appeal. "The inherent power of this Court to promulgate procedural rules emanates from the fundamental constitutional concept of the separation of powers and the vesting of judicial powers in the courts."
 
 Newell v. State
 
 ,
 
 308 So.2d 71
 
 , 76 (Miss. 1975). The " 'judicial power' ... includes the power to make rules of practice and procedure, not inconsistent with the Constitution, for the efficient disposition of judicial business."
 

 Id.
 

 Mississippi Rule of Appellate Procedure 4(a) prescribes a thirty-day time limit for perfecting an appeal, which may be extended by the trial court as provided in Rule 4(g). M.R.A.P. 4(a) ; 4(g). Rule 2(c) provides that "in the interest of expediting decision, or for other good cause shown," either appellate court may suspend the requirements of the rules and extend the time for taking an appeal in criminal and post-conviction cases. M.R.A.P. 2(c). The time for taking an appeal in a criminal case is a procedural matter governed by the Mississippi Rules of Appellate Procedure, which impose no time limit on this Court's ability to suspend the rules to allow an out-of-time appeal. The comment to Rule 2 recognizes that Rules 4(g) and 2(c)"supplant the procedure [for requesting an out-of-time appeal] described in
 
 Jones v. State
 
 ,
 
 355 So.2d 89
 
 , 90 (Miss. 1978)."